MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 94
Docket:       And-13-97
Argued:       September 11, 2013
Decided:      November 5, 2013

Panel:        ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

WILMINGTON TRUST COMPANY

v.

KAREN ANNE SULLIVAN-THORNE

SILVER, J.

[¶1]  Wilmington Trust Company ("Wilmington") appeals from a summary judgment entered in the District Court (Lewiston, *Lawrence, J.*) in favor of Karen Anne Sullivan-Thorne on Wilmington's complaint seeking a judgment of foreclosure.  Wilmington argues that the District Court erred in concluding that Wilmington's foreclosure action was barred by the doctrine of res judicata based on prior litigation involving insurance proceeds.  We agree and vacate the court's judgment.

I.  BACKGROUND

[¶2]  The following facts are drawn from the summary judgment record. Sullivan-Thorne is the owner of real property in Mechanic Falls.  On December 16, 2006, Sullivan-Thorne executed a note in the amount of $107,600 in favor of IndyMac Bank, FSB ("IndyMac").  To secure the note, she executed a

mortgage on her property in favor of IndyMac. The mortgage was recorded in the Androscoggin County Registry of Deeds.

[¶3] In February 2009, a mass of ice slid off Sullivan-Thorne's roof and knocked off the vent pipes, causing water to infiltrate her home. Ultimately, toxic mold spread throughout Sullivan-Thorne's home and rendered it uninhabitable. In 2010, Cambridge Mutual Fire Insurance Company commenced an action against Sullivan-Thorne in the Superior Court ("Cambridge Action") relating to the damage to her home. As part of that litigation, Sullivan-Thorne filed a claim against IndyMac seeking to have all insurance proceeds payable to her alone. IndyMac filed an answer stating as an affirmative defense that "IndyMac is entitled to, and [Sullivan-Thorne] is obligated under the Note and Mortgage to direct thereto, any and all funds paid or payable to [Sullivan-Thorne] arising out of [her] breach of the Note and Mortgage terms." Shortly thereafter, in May 2010, IndyMac sent Sullivan-Thorne a notice of default, which stated that she had defaulted on the mortgage by failing to pay monthly installments, and that her failure to cure the default within thirty-five days of receipt of the notice "shall result in the acceleration of the sums secured by the mortgage."

[¶4] In September 2010, IndyMac filed a counterclaim against Sullivan-Thorne asserting various breaches of the note and mortgage stemming from the damage to the property. IndyMac alleged, inter alia, that Sullivan-Thorne

had breached the note and mortgage by failing to maintain, protect, and repair the property, to promptly notify IndyMac of the damage to the property, and to obtain sufficient insurance coverage. IndyMac further alleged that Sullivan-Thorne had caused IndyMac "to not receive payment of insurance Proceeds in an amount sufficient to repair and restore the Property, or in an amount sufficient to pay all the Sums Secured by the Mortgage, all of which constitute a breach of the Note and Mortgage." In its prayer for relief, IndyMac asked that the court

> enter Judgment against [Sullivan-Thorne] . . . on all counts; direct all Proceeds to be made payable solely to [IndyMac] and order that further proceeds be paid in an amount sufficient to satisfy [IndyMac's] interest in the Property or to fully repair or replace the Property; and grant any such other relief as the Court deems just and proper.

Sullivan-Thorne moved to dismiss IndyMac's counterclaim as untimely pursuant to the court's scheduling order and because IndyMac did not request leave to amend its pleadings. The Superior Court (Androscoggin County, *MG Kennedy, J.*), noting that no opposition had been filed, granted the motion and dismissed IndyMac's counterclaim "with prejudice." The court entered a final judgment in the Cambridge Action on March 24, 2011, ordering that Cambridge re-issue the insurance proceeds and make them payable to Sullivan-Thorne alone.

[¶5] On October 27, 2011, Wilmington filed this action seeking a judgment of foreclosure against Sullivan-Thorne. Wilmington's complaint alleges that the

4

mortgage has been assigned to Wilmington, and that Sullivan-Thorne has failed to cure her default in accordance with the May 2010 notice of default and has not made monthly payments since March 1, 2010. The complaint also states that Wilmington "has declared the entire principal amount outstanding, accrued interest thereon, and all other sums due under the Note and Mortgage to be presently due and payable." Sullivan-Thorne moved for summary judgment, arguing that the action was barred by the doctrine of res judicata based on the Cambridge Action. The court agreed and entered summary judgment for Sullivan-Thorne on November 16, 2012. This appeal followed.[1]

## II. DISCUSSION

[¶6] "We review a grant of a summary judgment on a res judicata issue de novo, viewing the record in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Godsoe v. Godsoe*, 2010 ME 42, ¶ 15, 995 A.2d 232 (quotation marks omitted). Res judicata prevents "a party and its privies . . . from relitigating claims or issues that have already been decided." *Id.* "The doctrine of res judicata is grounded on

---

[1] On November 29, 2012, Wilmington filed a motion for reconsideration in the District Court. While that motion remained pending, on December 24, 2012, Wilmington filed a motion for extension of time to file an appeal pursuant to M.R. App. P. 2(b)(5), arguing that it had mistakenly believed that its motion for reconsideration had been timely and tolled the appeal period. On February 11, 2013, the District Court denied Wilmington's motion for reconsideration as untimely, but granted Wilmington's motion for extension of time to appeal.

concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants." *Lewis v. Me. Coast Artists*, 2001 ME 75, ¶ 9, 770 A.2d 644 (quotation marks omitted); *see also Beegan v. Schmidt*, 451 A.2d 642, 646-47 (Me. 1982) (discussing the policy underlying the doctrine of res judicata).

[¶7] "The doctrine of res judicata . . . has two components: collateral estoppel, also known as issue preclusion, and claim preclusion."[2] *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 16, 8 A.3d 677. "Claim preclusion bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Guardianship of Jewel M.*, 2010 ME 80, ¶ 40, 2 A.3d 301. Wilmington concedes that it is in privity with IndyMac, and that the first element of claim preclusion is therefore satisfied. We assume without deciding that there was a valid final judgment in the Cambridge Action for res judicata purposes. We therefore address solely the question of whether the

---

[2] Issue preclusion "prevents a party from relitigating factual issues already decided if the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding." *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 16, 8 A.3d 677 (quotation marks omitted). Because Sullivan-Thorne does not argue that issue preclusion applies in this case, we address only the claim preclusion component of res judicata.

6

issues presented "were, or might have been, litigated" in the Cambridge Action. *See id.*[3]

[¶8]   "To determine whether the matter[s] presented for decision in the instant action were or might have been litigated in the prior action, we examine whether the same cause of action was before the court in the prior case." *In re Kaleb D.*, 2001 ME 55, ¶ 8, 769 A.2d 179 (quotation marks omitted).  We define a cause of action through a "transactional test," *id.*, which "examin[es] the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong," *Sebra v. Wentworth*, 2010 ME 21, ¶ 12, 990 A.2d 538 (quotation marks omitted).  Put another way,

> [w]hat factual grouping constitutes a transaction [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they [form] a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*KeyBank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 17, 758 A.2d 528 (second alteration in original) (quotation marks omitted).  Claim preclusion may apply even where a suit "relies on a legal theory not advanced in the first case, seeks different

---

[3]  As a threshold matter, Sullivan-Thorne argues that Wilmington has waived several of the arguments it now makes on appeal by failing to present them in the District Court and by failing to cite several of the authorities on which it now relies.  We find no merit in Sullivan-Thorne's contentions.

relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case." *Sebra*, 2010 ME 21, ¶ 12, 990 A.2d 538 (quotation marks omitted).

[¶9]    Counterclaims are subject to a similar analysis pursuant to M.R. Civ. P. 13(a).   "Under principles usually analogized to *res judicata*, a defendant who fails to interpose a compulsory counterclaim as required by Rule 13(a) is precluded from later maintaining another action on the claim after rendition of judgment." *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 25, 956 A.2d 110 (quoting *Sargent*, 2000 ME 153, ¶ 17, 758 A.2d 528).  "When the second claim arises out of the *same transaction* as the first, previously-litigated claim, the second claim is barred by [Rule] 13(a)(1)." *Id.* (quoting *Sargent*, 2000 ME 153, ¶ 17, 758 A.2d 528).

[¶10] Wilmington argues that IndyMac, its predecessor in interest, could not have brought a foreclosure claim in the Cambridge Action because a foreclosure action may be initiated only by complaint, not by counterclaim.  The foreclosure statute provides that a foreclosure "must be commenced in accordance with the Maine Rules of Civil Procedure."  14 M.R.S. § 6321 (2012); *see also Sargent*, 2000 ME 153, ¶ 20, 758 A.2d 528.  The Civil Rules, in turn, provide that a foreclosure action "shall be commenced by complaint and service of summons as in other civil actions."  M.R. Civ. P. 80A(b), (g).  The statute also appears to

contemplate the filing of a complaint. *See* 14 M.R.S. § 6321 (requiring that the mortgagee record "the complaint" and that "the complaint" contain certain allegations).

[¶11] Some of our past opinions can be read to suggest that foreclosure proceedings may be instituted by counterclaim. *See, e.g.*, *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 711, 715 (Me. 1993) (stating that the mortgagee "properly pursued a counterclaim for foreclosure on [the] note"). These cases, however, predate significant changes to our foreclosure statutes and Rules of Civil Procedure, including new service, notice, and mediation requirements. *See* 14 M.R.S. § 6111(1-A) (2012) (setting forth information that must be provided to the mortgagor before the mortgagee may institute foreclosure proceedings in certain cases involving residential property); 14 M.R.S. § 6321-A (2012) (creating foreclosure mediation program); M.R. Civ. P. 93 (implementing sections 6111(1-A) and 6321-A); *see also* P.L. 2009, ch. 402, §§ 11, 18 (emergency, effective June 15, 2009) (codified as amended at 14 M.R.S. §§ 6111(1-A), 6321-A (2012)). In light of the specialized procedure the Legislature and our Rules have established in this context, we conclude that foreclosure proceedings may be instituted only by complaint and not by counterclaim. IndyMac therefore could not have brought a foreclosure claim in the Cambridge Action.

[¶12] Even if IndyMac could have initiated a foreclosure claim in the Cambridge Action, it would only have been *required* to do so based on claim preclusion principles if the Cambridge Action involved the same "cause of action" according to our "transactional test." *See Beegan*, 451 A.2d at 644-45. Here, the "basic wrong" for which IndyMac sought relief in the Cambridge Action was Sullivan-Thorne's alleged conduct in failing to protect, repair, and adequately insure the property, thereby reducing the value of IndyMac's security. IndyMac did not allege that Sullivan-Thorne had breached the note or mortgage by failing to make payments. Although IndyMac alleged a breach of the same note and mortgage pursuant to which Wilmington now seeks relief, Wilmington alleges a breach of a different term of the mortgage based on wholly separate conduct. *Cf. Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1008 (Fla. 2004) ("We can find no valid basis for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default."); *Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1175 (Ind. Ct. App. 2006) (concluding that "subsequent and separate alleged defaults under [a] note create[] a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure

action.").[4]  Sullivan-Thorne's alleged failure to make payments—the "nucleus of operative facts" at issue in this case—was not litigated in the Cambridge Action.

[¶13]  Because Wilmington's foreclosure claim does not present matters which "were, or might have been, litigated" in the Cambridge Action, the court erred as a matter of law in entering summary judgment for Sullivan-Thorne on claim preclusion grounds.

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

**On the briefs:**

Jay S. Gregory, Esq., Patrick T. Voke, Esq., and Matthew M. O'Leary, Esq., LeClairRyan, Boston, Massachusetts, for appellant Wilmington Trust Company

Henry I. Shanoski, Esq., Portland, for appellee Karen Anne Sullivan-Thorne

---

[4]  Sullivan-Thorne argues that because the mortgage contained an acceleration clause, IndyMac's prior counterclaim bars any future action to foreclose on the property pursuant to *Johnson v. Samson Construction Corporation*, 1997 ME 220, 704 A.2d 866.  In that case, we held that once a mortgagee "trigger[s] the acceleration clause of [a] note," the contract becomes "indivisible" and the mortgagee's procedural default in a foreclosure action precludes any later suit on the note.  *Id.* ¶ 8.  Contrary to Sullivan-Thorne's contentions, the summary judgment record, viewed in the light most favorable to Wilmington as the nonprevailing party, does not establish that Wilmington or IndyMac accelerated the debt, but rather only that IndyMac sent Sullivan-Thorne a notice of default stating that it would accelerate the debt if Sullivan-Thorne failed to cure her default.  *Johnson* is therefore inapposite.

**At oral argument:**

Matthew M. O'Leary, Esq. for appellant Wilmington Trust Company

Henry I. Shanoski, Esq., for appellee Karen Anne Sullivan-Thorne

Lewiston District Court docket number RE-2011-239
FOR CLERK REFERENCE ONLY