STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    CIVIL DIVISION
                                                  DOCKET NO. CV-16-20

                                          )
JANE M. TREWORGY, as PERSONAL             )
REPRESENTATIVE of the ESTATE OF           )
PAUL F. TREWORGY, and                     )
INDIVIDUALLY,                             )
                                          )
JOHN F. TREWORGY,                         )
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )          ORDER
                                          )
COMMISSIONER MARY C. MAYHEW,              )
in her fiduciary capacity as PUBLIC       )
GUARDIAN for PAUL F. TREWORGY,            )
                                          )
JODI INGRAHAM,                            )
                                          )
MARTHA PERKINS,                           )
                                          )
        Defendants.                       )

Before the Court is a motion to dismiss filed on February 1, 2016, on behalf of

Defendants Mary C. Mayhew, Martha Perkins, and Jodi Ingraham. The court conducted a

hearing on May 19, 2016. The matter is now in order for decision.

The court thanks both counsel for thorough written submissions and for an illuminating

and responsive oral argument. Having considered all of the material before it, the court

concludes the motion must be and hereby is **GRANTED**.

FACTUAL BACKGROUND

Plaintiff's action is based on allegations of improper conduct by representatives of the

Maine Department of Health and Human Services ("DHHS") in an adult protective custody case.

1

The factual summary that follows assumes, as it must when the court addresses a motion to dismiss, that all of the allegations in the complaint are true.

Plaintiff Jane Treworgy was married to Paul Treworgy, the subject of Defendant's alleged actionable conduct, until Mr. Treworgy died. The couple had a son, John Treworgy. (Pl.'s Compl. ¶¶ 1, 2, 13.) Before Paul died, he used a Maine advance healthcare directive form, dated June 19, 2010, to appoint Jane as his agent to make health care decisions. John was designated to assume this duty should Jane be unable to serve. (Id. ¶¶ 1-2.) Paul expressed a desire to be kept alive as long as possible within the limits of generally accepted health care standards. He specifically requested that he not receive morphine or other opiates unless he was in extreme pain. (Id. ¶ 17.)

Between 2010 and his death on October 29, 2011, Paul suffered from medical conditions that included prostate cancer, dementia, lower limb contracture, incontinence, and immobility. (Id. ¶ 13.) He was from time to time a patient at several health care facilities. (Id. ¶¶ 14, 18-21.)

On or about August 29, 2011, Jane called The Eastern Maine Medical Center in Bangor to request home services and a home health aide because Paul was beginning to develop bedsores. (Id. ¶ 22.) EMMC got in contact with DHHS Adult Protective Services (APS) and asked that it perform a home visit to evaluate Paul's safety. (Id. ¶ 23.) Pending the evaluation, EMMC placed Jane's application for services in a folder and did not provide her with any prescriptions or supplies for Paul. (Id. ¶ 24.) From August 29, 2011, to September 13, 2011, Jane made several calls to EMMC asking for prescriptions and for help attending to Paul's hygiene. (Id. ¶ 25.)

On September 13, 2011, Defendant Ingraham visited Paul at home. She reported to EMMC that the Treworgys were "doing the best they can with limited resources" and that Paul

2

was "of sound mind to make the choice to stay in the home." (*Id.* ¶ 30.) Ingraham did not identify herself as an employee of APS during the home visit. Plaintiff thought Ms. Ingraham had come to the Treworgys' house to provide the services previously requested. (*Id.* ¶ 31.) Defendant Perkins told EMMC that DHHS had tried twice, before Ingraham's visit, to evaluate the home but had been denied access. (*Id.* ¶ 26.) Plaintiffs claim that DHHS opened a "secret" file on Paul at this time. (*Id.* ¶¶ 32-33.)

On September 13, 2011, Paul was transported by ambulance to St. Joseph Hospital because he was suffering from a urinary tract infection, fever, and possible pneumonia. (*Id.* ¶ 34.) On September 26, 2011, before Paul's discharge from the hospital, Ingraham told Jane "it was her opinion Paul needed to go to a nursing home, and that Jane had better agree 'or the State would step in to make the decision for him.'" (*Id.* ¶ 38.) Jane agreed and told Ingraham she needed a few days to tour various facilities in the area. (*Id.* ¶ 41.)

Plaintiffs assert that on September 28, 2011, Defendant Ingraham told Jane and John, falsely, that she had taken guardianship of Paul. (*Id.* ¶ 44.) The same day, Defendant Perkins signed an Acceptance of Appointment of Public Guardian and thereby became Paul's guardian. This application was supported by Ingraham's Affidavit in Support of Temporary Public Appointment which, Plaintiffs allege, included "numerous false, misleading, and damaging statements," including the false claim that an emergency existed. (*Id.* ¶¶ 45-48.)

On September 30, 2011, the Penobscot County Probate Court conducted an emergency hearing on the Petition for Appointment of Public Guardian. (*Id.* ¶ 60.) Plaintiffs attended the hearing but were told by the judge that they were not to ask any questions or speak unless spoken to. (*Id.* ¶ 61.) The same day, the Probate Court signed an order granting custody of Paul and

3

authority to make all his medical decisions to Defendant Mary Mayhew as Public Guardian. (*Id.* ¶ 63.)

On September 29, 2011, before the Probate Court entered its order granting Ingraham, Perkins, and/or the Public Guardian authority to handle Paul's medical decisions, Defendants ordered that Paul be transferred to Eastside Rehabilitation and Living Center (Eastside) and began making all decisions about his care. (*Id.* ¶ 62.) During Paul's stay at Eastside, Plaintiffs were allowed to visit him but were not allowed to be alone with him. Neither were they given any information regarding his healthcare. (*Id.* ¶¶ 65, 68.) Plaintiffs allege that during Paul's stay at Eastside Defendants made decisions about his healthcare that were not in good faith. (*Id.* ¶ 66.) Plaintiffs further allege that the nursing home was infested with maggots and had been cited several times for abuse, neglect, and deficiency in care. (*Id.* ¶ 89.)

Paul Treworgy died on October 29, 2011. (*Id.* ¶ 72.)

On June 13, 2014, Plaintiffs filed a civil action in United States District Court for the District of Maine. The complaint named as defendants Commissioner Mary Mayhew (defendant in this action), Jodi Ingraham (defendant in this action), County Commissioners for Penobscot County, Maine, and Susan Almy, the Penobscot County Registrar of Probate. *Treworgy v. Mayhew*, No. 1:14-CV-97-GZS, 2014 WL 7792851 (D. Me. 2014), *report and recommendation adopted in part, rejected in part*, 2015 WL 541687 (D. Me. 2015).

The complaint in the federal action is strikingly similar to the complaint now before the court. Both are based on the same conduct arising out of the same set of circumstances. *Id.*; (Mot. to Dismiss Ex. A.) The claims brought in federal court against Defendant Mayhew were dismissed. *Treworgy*, 2015 WL 541687. The claims brought against Defendant Ingraham were dismissed without prejudice because Plaintiffs had not timely served her. *Id.*

4

## DISCUSSION

When deciding a motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and construe most favorably to the plaintiff all reasonable inferences drawn from those facts. *McClosky v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). To be sufficient, a complaint need only consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741. A complaint can be dismissed only when it fails to state a claim for which relief may be granted. *See* M.R. Civ. P. 12(b)(6). The court's analysis tests the sufficiency of the complaint as a question of law. *Persson v. Dep't of Human Servs.*, 2001 ME 124, ¶ 8, 775 A.2d 363, 365; *In re: Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217.

Defendants seek dismissal on the basis of res judicata. Res judicata ensures that a cause of action will not be litigated more than once. *Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866. The doctrine promotes judicial efficiency, upholds the stability of final judgments, and ensures fairness to litigants. *Lewis v. Me. Coast Artists*, 2001 ME 75, ¶ 9, 770 A.2d 644. Res judicata bars the relitigation of claims if:

    (1) the same parties or their privies are involved in both actions;
    (2) a valid final judgment was entered in the prior action; and
    (3) the matters presented for decision in the second action were, or might have been, litigated in the first action.

*Wilmington Trust Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371 (quotation marks omitted). To determine whether matters were or might have been litigated in the prior action, the court must examine whether the same cause of action was before the court in the prior case. *Id.* What constitutes a cause of action is defined through a transactional test, which "examin[es] the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus

5

of operative facts, and sought redress for essentially the same basic wrong." *Id.* (quotation marks omitted).

Plaintiffs argue that res judicata does not apply because the parties in this case are different from those in the federal action; the claims brought by Jane as an individual are different from the claims brought on behalf of Paul Treworgy; and the damages sought in the two actions are not the same. These arguments reflect some surface truth but do not in substance support Plaintiffs' position.

All parties to this action are the same as the named parties in the federal case or are in privity with them: Jane and John Treworgy were both plaintiffs in the federal action. Mary Mayhew, in her official capacity as head of DHHS, was a defendant.[1] The federal case was not specifically dispositive against Perkins or Ingraham, Perkins because she was not named and Ingraham because she was not served, but the dismissal in that case determines this case because both are employees of DHHS and thus in privity with Mayhew as head of DHHS. *See Brown v. Osier*, 628 A.2d 125 (Me. 1993); *Schuster v. Martin*, 861 F.2d 1369 (5th Cir. 1988). Plaintiffs state they are now suing Perkins and Ingraham in their individual capacities, but that argument does not alter the result because their complaint addresses only actions Perkins and Ingraham took in their official capacities as employees of the State of Maine. *Brown v. Osier*, 628 A.2d at 129 (holding that because two employees were being sued solely for actions they took in their official capacities, the plaintiff could not "circumvent the sound principles of res judicata merely by including the word 'individually' in his complaint"). The federal action ended with a valid final judgment in favor of Mayhew, in the form of a dismissal for failure to state a claim, that

---

[1] Plaintiffs argue that in the federal complaint, Jane Treworgy sued only in her capacity as Personal Representative of Paul Treworgy and not in her individual capacity, making the parties different in this action. The caption of the federal complaint confirms the contrary. (Mot. to Dismiss Ex. A.) ("Plaintiffs Jane M. Treworgy, individually and in her capacity as Personal Representative of the Estate of Paul F. Treworgy . . . .").

6

was never appealed. *Treworgy*, 2015 WL 541687 (D. Me. 2015); *Wilmington Trust*, 2013 ME 94, ¶ 7, 81 A.3d 371. The parties to this action, therefore, are functionally identical to those who both advanced and were subject to the claims in the federal case.

Further, Plaintiffs' claims in this case arise out of exactly the same actions as those alleged in the federal case. Plaintiffs altered a few legal arguments and rephrased a few factual allegations when they filed their action in this Court a year and a half after their filing in federal court, but the conclusion is unavoidable that both cases "arose out of the same nucleus of operative facts" and "sought redress for essentially the same basic wrong." *Wilmington Trust*, 2013 ME 94, ¶ 7, 81 A.3d 371. The rephrasing of factual allegations and the addition of claims against Perkins and Ingraham in Counts II-VI of this complaint do not alter the underlying substance of the claims presented, which are the same as those resolved in the federal case. Further, even if the claims in the two cases differed, res judicata would still bar this action; that doctrine applies not only to claims litigated but to those that could have been litigated. *Wilmington Trust*, 2013 ME 94, ¶ 7, 81 A.3d 371.

Plaintiffs argue further that res judicata does not apply because there has since been a change in the law that would have altered the outcome of the federal action. Even if true that would not revive this cause of action. The consequences of res judicata are not alleviated when the previous judgment rested on a subsequently overruled law. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

For all of the reasons outlined above, the doctrine of res judicata bars Plaintiffs' claims both against Mayhew and against her employees who are in privity with her. The court notes that Plaintiffs were not without remedy in their dispute with defendants. They could have appealed the dismissal of their federal action or sought an amendment to the judgment in the trial

7

court. Filing a new, analogous case in state court is not a legal substitute for those remedies.

CONCLUSION AND ORDER

Plaintiffs' claims against Mayhew in her official capacity as head of DHHS are barred by the doctrine of res judicata. Plaintiffs' claims against Perkins and Ingraham are also barred because they were working in their official capacities as employees of DHHS under Mayhew's direction and therefore were in privity with her. Therefore, Defendants' motion to dismiss is **GRANTED**.

So **ORDERED.**

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _June 27, 2016_

_Bruce C. Mallonee_
Bruce C. Mallonee
Justice, Maine Superior Court

Date entered on Civil Docket: 7/6/16

8