MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 179
Docket:      Pen-16-354
Argued:      March 3, 2017
Decided:     August 15, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

ESTATE OF PAUL F. TREWORGY et al.

v.

COMMISSIONER, DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.

HUMPRHEY, J.

[¶1]   Jane M. Treworgy, John F. Treworgy, and the Estate of Paul F. Treworgy (collectively, the Treworgys) appeal from a judgment entered in the Superior Court (Penobscot County, *Mallonee, J.*) dismissing their constitutional and statutory claims against the Commissioner of the Department of Health and Human Services and two Department employees, Jodi Ingraham and Martha Perkins.   The court concluded that the Treworgys' claims are precluded by a previous judgment in the Commissioner's favor in an action in federal court arising out of the same allegedly wrongful acts.   We affirm the judgment.

## I. BACKGROUND

[¶2]  In both their June 2014 action in federal court and their February 2016 action in the Superior Court, the Treworgys alleged the following facts. *See Sabina v. JPMorgan Chase Bank, N.A.*, 2016 ME 141, ¶ 2, 148 A.3d 284.  Paul Treworgy was Jane's husband and John's father.  In June 2010, after encountering various health problems, he signed an advance healthcare directive authorizing Jane (or, in the alternative, John) to make healthcare decisions for him.  *See* 18-A M.R.S. §§ 5-801, 5-802 (2016).  He indicated that he wanted Jane to serve as his guardian if he ever needed one, that he wanted "to be kept alive as long as possible within the limits of generally accepted health care standards," and that he did not want to be given morphine or other opiates unless he was in extreme pain.

[¶3]  The Treworgys allege that despite being aware of Paul's wishes as expressed in his advance healthcare directive, the Department, through its employees, unlawfully instituted temporary guardianship proceedings, *see* 18-A M.R.S. § 5-310-A (2016),[1] and took control of his healthcare decisions. The Treworgys also allege that while acting unlawfully as the public guardian,

---

[1]  Title 18-A M.R.S. § 5-310-A(a) (2016) provides that "[w]hen a person alleged to be incapacitated has no guardian and an emergency exists and no other person appears to have authority to act in the circumstances . . . [the Probate Court] may enter an order, ex parte or otherwise, appointing a temporary guardian in order to prevent serious, immediate and irreparable harm to the health or financial interests of the person alleged to be incapacitated."

the Department, through its employees, made healthcare decisions for Paul that ran contrary to his wishes and the wishes of Jane and John. According to the Treworgys' complaints, the Department and its employees took unauthorized steps to place Paul in a nursing home in September 2011, where he was mistreated; ordered the administration of opiates and cessation of his cancer treatment; and refused to disclose documentation to the Treworgys. Paul died in the nursing home on October 29, 2011.

[¶4] The Treworgys first filed an action in the United States District Court for the District of Maine on June 13, 2014. They named as defendants the Commissioner, in her official capacity; Ingraham, "in her individual capacity"; the Penobscot County Commissioners; and the Penobscot County Register of Probate, in her official capacity. Pursuant to 42 U.S.C.S. § 1983 (LEXIS through Pub. L. No. 115-45), the Treworgys claimed that all defendants violated various rights guaranteed by the United States Constitution. They also claimed violations of the Maine Constitution and Maine's Uniform Health-Care Decisions Act, *see* 18-A M.R.S. §§ 5-801 to 5-818 (2016).

[¶5] In February 2015, the court (*Singal, J.*) dismissed all claims against the Commissioner and the County defendants with prejudice for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6).

4

It also dismissed the claims against Ingraham without prejudice upon determining that the Treworgys did not demonstrate good cause for failing to timely serve her. The Treworgys did not appeal from the judgment.

[¶6] Approximately one year later, the Treworgys filed the Superior Court action giving rise to this appeal. In this action, they named the Commissioner, in her official capacity; Ingraham; and Perkins as defendants. They alleged the facts described above. Against the Commissioner, they asserted claims for breach of fiduciary duty and breach of a duty to properly supervise employees. Against Ingraham and Perkins, they asserted claims for due process and privacy rights violations pursuant to the Maine Civil Rights Act, *see* 5 M.R.S. §§ 4681-4685 (2016), and violation of the Uniform Health-Care Decisions Act, *see* 18-A M.R.S. §§ 5-801 to 5-818.

[¶7] The Commissioner, Ingraham, and Perkins moved to dismiss the Treworgys' claims, arguing, inter alia, that the claims against the Commissioner were barred by the doctrine of res judicata given the disposition of the prior action in federal court. They attached a copy of the Treworgys' federal court complaint.[2] In a reply to the Treworgys' opposition,

---

[2] Although the record therefore included materials outside the pleadings, the proceeding was not transformed into a summary judgment proceeding because those materials were public records and their authenticity was not challenged. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43 ("[O]fficial public documents, documents that are central to the plaintiff's claim,

they argued that the statutory claims against Ingraham and Perkins were also precluded by the judgment in the Commissioner's favor in the previous federal court action.

[¶8]  After holding a hearing, the court (*Mallonee, J.*) dismissed all of the Treworgys' claims.  The court concluded that the claims against all three defendants were barred by the claim preclusion component of the doctrine of res judicata, in part because "[a]ll parties to [the Superior Court] action are the same as the named parties in the federal case or are in privity with them."

[¶9]  The Treworgys filed this timely appeal.

## II.  DISCUSSION

[¶10]  The Treworgys argue that the court erred by dismissing their claims against Ingraham and Perkins on claim preclusion grounds.[3]  We review the grant of a motion to dismiss de novo, viewing the factual allegations in the complaint as if they were admitted and "in the light most favorable to the plaintiff."  *Andrews v. Sheepscot Island Co.*, 2016 ME 68, ¶ 8,

and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged.").

[3] Although in their brief the Treworgys also argued that the court erred by concluding that their claims against the Commissioner are barred, they now concede that they cannot succeed in that argument.  We agree, and we do not discuss the issue further.  And because we affirm the court's dismissal of the Treworgys' claims on res judicata grounds, we do not reach the parties' arguments as to whether the substantive allegations in the Treworgys' complaint would otherwise be sufficient to entitle them to relief.

6

138 A.3d 1197 (quotation marks omitted). We examine de novo the legal question of whether the trial court correctly applied the doctrine of res judicata. *In re M.M.*, 2014 ME 15, ¶ 14, 86 A.3d 622.

[¶11] "The doctrine of res judicata prevents the relitigation of matters already decided," *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097, in order to promote "judicial economy and efficiency, the stability of final judgments, and fairness to litigants," *Beegan v. Schmidt*, 451 A.2d 642, 646 (Me. 1982).[4] "In determining the preclusive effect of a federal court judgment, federal law controls." *Brown v. Osier*, 628 A.2d 125, 127 (Me. 1993). According to federal law, the elements of claim preclusion, the branch of res judicata at issue here, are "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Hatch v. Trail King Indus.*, 699 F.3d 38, 45 (1st Cir. 2012) (quotation marks omitted).

[¶12] We have no difficulty concluding that the first two elements of claim preclusion are met in this case. As to the first element, the federal

---

[4] "Claim preclusion relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication." *Hatch v. Trail King Indus.*, 699 F.3d 38, 45 (1st Cir. 2012) (alterations omitted) (quotation marks omitted). "[T]he public should not be called on to bear the expense of two trials where one will suffice." *Pillsbury v. Kesslen Shoe Co.*, 136 Me. 235, 238, 7 A.2d 898 (1939).

court's dismissal of the Treworgys' claims against the Commissioner for failure to state a claim, from which they did not appeal, constitutes a final judgment on the merits of those claims. *See AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005) ("Ordinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits . . . ."). As to the second element, the factual allegations that formed the basis for the Treworgys' claims against the Commissioner in the previous action are the same as those that give rise to the claims against Ingraham and Perkins in the present action, meaning that the "causes of action" are sufficiently identical. *See Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir. 1994) ("The necessary identity [between causes of action] will be found to exist if both sets of claims . . . derive from a common nucleus of operative facts.").

[¶13]    Thus, only the third element of claim preclusion—the requirement of "sufficient identicality between the parties in the two actions"—is at issue here. *Hatch*, 699 F.3d at 45 (quotation marks omitted). Although courts have discussed this measure of relatedness between the parties in the two actions using the term "privity," *e.g.*, *Guardianship of Jewel M.*, 2010 ME 80, ¶ 40, 2 A.3d 301, the First Circuit Court of Appeals has further developed the contours of the inquiry:

> [C]laim preclusion applies if the new defendant is closely related to a defendant from the original action . . . , not merely when the two defendants are in privity. . . . Whether a close and significant relationship exists between an original defendant and a defendant only named in a later suit varies with the facts. . . . The common factors [are] that the later claims were or could have been brought against the original defendant in the original suit and the subsequent suit tried to hold related defendants liable on related claims.

*Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 17-18 (1st Cir. 2010) (alteration omitted) (quotation marks omitted); *see Silva v. City of New Bedford*, 660 F.3d 76, 80 (1st Cir. 2011). This approach is consistent with our expressed methodology of "look[ing] beyond the nominal parties of record to the real parties in interest" to determine whether a party will be bound by a prior judgment. *Ne. Harbor Golf Club, Inc. v. Town of Mount Desert*, 618 A.2d 225, 227 (Me. 1992) (quotation marks omitted). "[S]ubstance over form controls the inquiry into whether privity will be found." *Id.*

[¶14] The Treworgys point out that the prior judgment was in favor of the Commissioner in her official capacity, while in the present action they have sued Ingraham and Perkins in their individual capacities.[5] They argue that Ingraham and Perkins—as individuals—therefore do not have the type of

---

[5] Although in their Superior Court complaint the Treworgys did not expressly state whether they were suing Ingraham and Perkins in their individual or official capacities, we accept the parties' representations that Ingraham and Perkins were sued as individuals.

relationship with the Commissioner—as a placeholder for the government—that is required for claim preclusion to apply.

[¶15]  We addressed this issue directly in *Brown*, applying federal claim preclusion law.  628 A.2d at 127-29.  In that case, in an action in the Superior Court, the plaintiff asserted constitutional claims against a government-run school and two school employees in their individual and official capacities. *Id.* at 126.  At the same time, in federal court, the plaintiff asserted federal statutory claims against the school, and the federal court entered a judgment in the school's favor.  *Id.* at 126-27.  Both actions arose out of allegations that the school, through its employees, forced the plaintiff to retire because of his age.  *Id.* at 126.  The Superior Court dismissed the claims against the school employees, concluding that they were precluded by the federal court judgment in the school's favor.  *Id.* at 127.

[¶16]  We affirmed the dismissal.  *Id.* at 129.  We first noted that "[s]uits against employees in their official capacities are essentially suits against the government entities for which they work" and that "an official sued in his individual capacity is generally not considered to be in privity with the government for purposes of res judicata."  *Id.* at 128 (alterations omitted) (quotation marks omitted).  We held, however, that the school employees'

interests were sufficiently aligned with the government's for claim preclusion to apply because the plaintiff sought "redress for the acts of [the employees undertaken] solely in their roles as supervisors at the [s]chool, i.e., in their official capacities." *Id.* at 129. The plaintiff could not "be permitted to circumvent the sound principles of res judicata merely by including the word 'individually' in his complaint." *Id.*

[¶17] The First Circuit Court of Appeals reached the same conclusion recently in *Silva*, 660 F.3d at 80. In that case, the plaintiff first sued two city police officers based on injuries she received from an altercation that occurred when the officers arrested her at a nightclub. *Id.* at 78-79. The plaintiff then initiated a second suit based on the same incident in which she named the city as a defendant. *Id.* at 78, 80. Addressing the issue of the relatedness of the parties for claim preclusion purposes, citing *Airframe*, 601 F.3d at 17, the court reiterated that claim preclusion applies if the new defendant "is closely related to a defendant from the original action." *Silva*, 660 F.3d at 80 (quotation marks omitted). The court held that the plaintiff's claims against the city were precluded by the previous judgment in her action against the individual officers, reasoning that the officers and the city were "sufficiently closely related for purposes of claim preclusion" because the

officers "were employees of the [c]ity and were acting within the scope of their employment during the nightclub incident that gave rise to the claims in the two cases," and the plaintiff's claims against the city were "based on the officers' actions." *Id.* The court also cited *Negron-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 10 (1st Cir. 2008), in which it had previously suggested that claim preclusion would apply "when a government is sued first (unsuccessfully) and officers in their personal capacities [are] sued afterwards on the same theory." *See Silva*, 660 F.3d at 80.

[¶18] We are not persuaded by the Treworgys' attempts to distinguish *Brown* and similar cases. *See Negron-Fuentes*, 532 F.3d at 10; *Silva*, 660 F.3d at 80; *Cohen v. Shea*, 788 F. Supp. 66, 67-68 (D. Mass. 1992); *see also Schuster v. Martin*, 861 F.2d 1369, 1373 (5th Cir. 1988); *Lamb v. Geovjian*, 683 A.2d 731, 735 (Vt. 1996). Although on appeal the Treworgys have labeled Ingraham and Perkins as "individual" defendants, their claims are based entirely on alleged actions and omissions by those defendants in their roles as an arm of the State, which has the duty to act as the public guardian.[6] *See* 18-A M.R.S.

---

[6] Also, contrary to the Treworgys' contention, the fact that the federal court dismissed the claims against Ingraham without prejudice does not lead ineluctably to the conclusion that a subsequent claim against Ingraham must be allowed to proceed. The federal court dismissed the claims against Ingraham because the Treworgys failed to timely serve her and failed to show good cause why. We decline to treat the court's dismissal as an advisory mandate that a hypothetical subsequent suit could not be precluded.

§ 5-601(b) (2016).  We therefore conclude that Ingraham and Perkins have a sufficiently close relationship to the Commissioner to satisfy the requirement of claim preclusion of "sufficient identicality between the parties in the two actions."  *Hatch*, 699 F.3d at 45 (quotation marks omitted).  Because the other two elements of claim preclusion are met, the trial court did not err when it determined that the Treworgys' claims against Ingraham and Perkins are precluded by the previous judgment in the Commissioner's favor.

The entry is:

Judgment affirmed.

---

Cynthia A. Dill, Esq. (orally), Troubh Heisler, PA, Portland, for appellants Jane M. Treworgy, John F. Treworgy, and the Estate of Paul F. Treworgy

Janet T. Mills, Attorney General, and Christopher C. Taub, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellees Jodi Ingraham, Martha Perkins, and the Commissioner of the Department of Health and Human Services

Penobscot County Superior Court docket number CV-2016-20
FOR CLERK REFERENCE ONLY