STATE OF MAINE                          BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                         LOCATION:  PORTLAND
                                        DOCKET NO. BCD-SA-19-02


20 THAMES STREET, LLC   )
& 122 PTIP, LLC,        )
                        )
          Plaintiffs    )
                        )
v.                      )               ORDER GRANTING OCEAN STATE'S
                        )               MOTION TO DISMISS
OCEAN STATE JOB LOT OF  )
MAINE 2017, LLC,        )
                        )
          Defendant     )


In response to Plaintiffs' commercial FED Complaint, Defendant brought a Motion to Dismiss on the grounds that Plaintiffs' claim has already been litigated and is thus barred.  The Motion presents the question of whether or to what extent the principles of *res judicata* apply to a landlord's claim in a commercial FED action regarding tenant conduct.  For the reasons discussed below, the Court determines that Plaintiffs' commercial FED action based on Defendant's allegedly improper tractor trailer parking is barred by the doctrine of *res judicata*.  Accordingly, Defendant's Motion to Dismiss is GRANTED.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable

1

to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id*. The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

BACKGROUND

Landlord Plaintiffs in this commercial Forcible Entry and Detainer ("FED") action are 20 Thames Street, LLC and 122 PTIP, LLC (collectively "Thames Street"). The tenant is Defendant Ocean State Job Lot of Maine 2017, LLC ("Ocean State"). These same three parties were involved in a prior commercial FED action involving the same lease and property. The history of that prior litigation is directly relevant to the question of *res judicata* in this case.[1]

By letter dated April 25, 2018, Thames Street served on Ocean State a Notice of Default and Termination under Lease Agreement (the "2018 Notice"). The 2018 Notice asserted that Ocean State was in default of four lease provisions: Section 27 (failure to sign and return a Subordination Non Disturbance Agreement ("SNDA");

---

[1] In its motion, Ocean State asks the Court to take judicial notice of the pleadings (including the attachments thereto), trial transcript, and judgments from the 2018 FED action. Thames Street does not object. The Court additionally notes that key documents from the 2018 FED action are explicitly referenced in the 2019 commercial FED complaint filed by Thames Street. The Court therefore takes judicial notice of the pleadings, trial transcript, and judgments of the 2018 FED action. *See Currier v. Cyr*, 570 A.2d 1205, 1207-8 (Me. 1990). Neither party argues that taking judicial notice of said material converts the Motion to Dismiss into a Motion for Summary Judgment, and the Court agrees that handling the motion as a Motion to Dismiss is appropriate. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶¶ 7-11, 843 A.2d 43.

Section 29 (failure to sign and return an Estoppel Certificate); Section 9 (failure to provide evidence of insurance; and Section 3 (allowing a trailer to remain at the loading dock for a period of time). The 2018 Notice further asserted: "There is no way to cure the default enumerated in item 2 above and Section 29 provides that the Lease may be terminated immediately. The additional defaults are not in waiver of the Landlord's right to immediately terminate the Lease for failure to provide the Estoppel Agreement." The 2018 Notice concluded by directing Ocean State to quit and surrender the Premises to Thames Street.

Ocean State declined to quit and surrender the Premises. The parties engaged in communications regarding the alleged defaults, especially with regard to the Estoppel Certificate. As to the loading dock issue, by letter dated May 3, 2018, Ocean State replied as follows: "Section 3 of the Lease permits the Tenant to park its trailers at the truck loading docks while unloading the same, including overnight. The trailer is removed when emptied and replaced with a different trailer that is then unloaded. The trailer is active and is constantly replaced."

Dissatisfied with Ocean State's responses, on or about May 7, 2018, Thames Street filed a one count commercial FED complaint seeking to evict Ocean State (the "2018 Complaint"). Paragraph 16 of the 2018 Complaint references and attaches the 2018 Notice. Paragraph 18 of the 2018 Complaint references and attaches the May 3, 2018 letter described above. Paragraph 21 of the 2018 Complaint alleges as follows:

> By reason of the Notice of Termination of Lease for failure to:
>
> a.      sign and return the SNDA and sign and return the Estoppel as required by the Lease;

3

b.        Provide evidence of insurance naming the Plaintiff as an additional insured is required by the Lease; and

c.        Comply with Section 3 of the Lease by allowing a trailer to remain at the loading dock for a period of time in excess of overnight or as otherwise may be permitted by the Lease,

Defendant's tenancy has been terminated. See Exhibit H, Defendant's refusal to execute the Estoppel.

Based on the 2018 Complaint, the matter proceeded to a three day bench trial on June 27 and 28, 2018 and July 16, 2018. The focus of the trial was primarily trained on Ocean State's alleged failure to provide the Estoppel Certificate. However, a witness called by Ocean State provided testimony during the trial on the trailer and loading dock issue.

Following the conclusion of the trial and submission of post-trial briefs, the Court granted judgment to Ocean State.  According to the Court's written decision, "[t]he issue in this case is whether [Ocean State's] failure to return the form of estoppel certificate provided by Plaintiffs within 10 days after Plaintiffs' request constitutes a non-curable default under the lease that entitles plaintiffs to terminate the lease . . . ." *20 Thames Street, LLC, et al. v. Ocean State Job Lot of Maine 2017,* LLC, BCD-SA-2018-01 (Bus. & Consumer Ct. August 14, 2018, Mulhern, J). The Court found in favor of Ocean State.  The Court's written decision does not mention the trailer and loading dock issue.[2]

---

[2] On appeal, the Superior Court affirmed the judgment in all substantive respects, reversing only on the limited issue of attorney fees.  *20 Thames Street LLC, et al. v. Ocean State Job Lot of Maine 2017, LLC*, AP-18-47 (Me. Super. Ct., Cum. Cty, June 20, 2019, Warren, J.).  Thames Street did not appeal. Ocean State appealed on only the attorney fees issue, and that limited appeal remains pending.  As with the trial court decision the Superior Court decision also focuses on the Estoppel Certificate issue, and does not mention the trailer and loading dock issue.

By letter dated April 25, 2019, Thames Street served on Ocean State a Notice of Default and Termination under Lease Agreement (the "2019 Notice"). According to the 2019 Notice:

> The purpose of this letter is to provide Tenant with notice of the immediate termination of the Lease due to Tenant's ongoing and continuous violation, since April 2018, of Section 3 of the Lease pursuant to which Tenant is prohibited from storing trailers on the Premises other than during times when those trailers are being unloaded and, in any event, no longer than overnight.

The 2019 Notice specifically notes that: "Tenant received a Notice of Default regarding this Lease violation dated April 25, 2018." The 2019 Notice concludes by directing Ocean State to quit and surrender the Premises to Thames Street.

Once again, Ocean State declined to quit and surrender the Premises. The parties engaged in communications regarding the alleged default. Dissatisfied with Ocean State's responses, on or about October 24, 2019, Thames Street filed a commercial FED complaint seeking to evict Ocean State (the "2019 Complaint"). Paragraph 6 of the 2019 Complaint references and attaches the 2018 Notice. According to Paragraph 6 of the 2019 Complaint, Ocean State is in "violation of the Lease by allowing trailers to remain on the premises for a period of time in excess of the time necessary to unload same and for a period of time in excess of overnight." Paragraph 9 alleges that Ocean State "has failed and refused to modify its practice of allowing trailers to remain on the Premises for multiple days at a time." Paragraph 11 alleges that Ocean State's conduct violates Section 3 of the Lease.

In response to the 2019 Complaint, Ocean State has brought this Motion to Dismiss arguing that the action is barred by the doctrine of *res judicata*.

ANALYSIS

The contours of *res judicata* are well defined and easily mapped. The doctrine prevents parties from relitigating claims or issues that have already been decided. *Estate of Treworgy v. Comm'r, HHS*, 2017 ME 179, ¶ 11, 169 A.3d 416; *see also Wilmington Trust Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 6, 81 A.3d 371. The purpose of the doctrine is to promote judicial economy, the stability of final judgments, and fairness to litigants. *Wilmington Trust*, 2013 ME 94, ¶ 6. The doctrine has two components: claim preclusion and issue preclusion (the latter component is also known as collateral estoppel). *Id.* ¶ 7. In this case, since neither the trial court nor the Superior Court (in its appellate capacity) made an explicit determination of the trailer and loading dock issue pursuant to Section 3 of the Lease, issue preclusion does not apply. The Court thus focuses its analysis on the claim preclusion component of *res judicata*.

Claim preclusion prevents a party from bringing any claim in a subsequent action that could have been brought in the original action. *Sebra v* Wentworth, 2010 ME 21, ¶ 11, 990 A.2d 538. Claim preclusion bars the relitigation of claims if (1) the same parties are involved in both actions, (2) a valid final judgment was entered in the prior action, and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action. *Wilmington Trust*, 2013 ME 94, ¶ 7. With regard to the third element, the Court applies a transactional test to determine whether the same cause of action was before the court in the prior case. *Id.* ¶ 8. The transactional test examines whether the operative facts form a convenient trial unit, arise out the same transaction or nucleus, and are asserted to redress essentially the

6

same basic wrong.  *Id.*  Claim preclusion may apply even where the second case relies on a legal theory not advanced in the first case, seeks different relief than sought in the first case, and involves evidence different from the evidence relevant to the first case. *Id.*

The principles of *res judicata* can be applied to judgments arising from FED actions.  *See, e.g., Yeadon Fabric Domes, Inc. v. Maine Sports Complex, LLC*, 2006 ME 85, ¶ 12, n. 3, 901 A.2d 200. However, at least where tenant conduct is involved, it makes sense to apply the doctrine cautiously.  A Landlord who is unsuccessful on a first attempt to evict a tenant for failure to pay rent, or for making unreasonable noise, as just two examples, should not be barred from bringing one or more subsequent actions against the same tenant if the tenant fails to pay rent in the future, or makes new sounds which the landlord alleges are unreasonable.  In the context of domestic relations cases, the Law Court has advised that the principles of *res judicata* should be applied with caution*,* and that same note of caution should be applied to the FED context.

In this case, however, cautiously applied, the claim preclusion component of the doctrine of *res judicata* bars the Section 3 tractor and loading dock claim which forms the sole basis of the 2019 Complaint.  The same parties are involved, and a valid final judgment was entered in the prior action.  Further, the transactional test is satisfied in all respects.  The first cause of action was a commercial FED action, as is the second case; both actions involve exactly the same property and the same lease.  Thames Street's 2018 Notice asserted four grounds of default—all together in one letter.  One of those grounds was the tractor and loading dock issue under Section 3

7

of the lease. Paragraph 21 of Thames Street's 2018 Complaint alleged all four grounds of default—altogether in one paragraph—as grounds for termination. Although the 2018 trial was primarily concerned with the Estoppel issue, Ocean State did put on evidence during the trial about the tractor and loading dock issue. Thames Street did not object to the evidence. In its 2019 Complaint, Thames Street references and attaches the 2018 Notice.

For all of these reasons, the tractor and loading dock issue grows out of the same nucleus of operative facts as the other default issues tried in the first case. The tractor and loading dock issue is related in time, space, origin, and motivation[3] to the other issues, including the Estoppel issue, and formed a convenient trial unit. For purposes of this second action, the tractor and loading dock issue is founded upon the same transaction.

The 2018 Complaint sought redress, i.e. eviction, for Ocean State's alleged defaults, including under Section 3 of the lease. The 2019 Complaint also seeks redress, i.e. eviction, for Ocean State's alleged default under Section 3 of the lease. Accordingly, both the 2018 action and the current 2019 action seek redress for essentially the same basic wrong (defaults under the lease), and all the elements necessary to bar Thames Street's 2019 Complaint on the basis of *res judicata* are satisfied.

---

[3] In the Order On Plaintiffs' Motion for Additional Findings of Fact, this Court determined "[t]here was credible evidence at trial that Plaintiffs attempted to use a hyper technical interpretation of the lease to try to evict Defendant because Plaintiffs did not like the terms of the lease they had assumed . . .."

The question remains whether in this FED action, the doctrine *should* be applied. As discussed earlier, Landlords should not be barred from bringing subsequent actions to litigate FED claims against the same tenants, even for disputes involving the same subject area, if new and different conduct occurs. In this case, however, accepting the allegations in the 2019 Complaint as admitted, and construing the allegations in the light most favorable to Thames Street, new and different conduct has not occurred.

As Thames Street makes clear in its 2019 Notice, Ocean State's tractor and loading dock conduct has been an "ongoing and continuous violation, since April 2018, of Section 3 of the Lease . . . ." In other words, Ocean State's conduct has been occurring continuously since before the 2018 Complaint. According to Paragraph 9 of Thames Street's 2019 Compliant, Ocean State "has failed and refused to modify its practice . . . ." Indeed, Thames Street references and attaches the 2018 Notice to the 2019 Complaint. In other words, the conduct of which Ocean State complains is precisely and exactly the same conduct Ocean State complained about in the 2018 Complaint. The conduct has not changed in any material respect, and thus is not new and different. Hence it is appropriate to apply the doctrine of *res judicata* in this FED case to bar Thames Street's 2019 Complaint.[4]

Thames Street resists this conclusion for several reasons, none of which are persuasive. Thames Street first argues that it terminated the lease solely upon a

---

[4] That is not to say that Thames Street is forever barred from litigating tractor and loading dock issues under Section 3 of the lease. If Ocean State were in the future to engage in materially different conduct under Section 3 (say, for the sake of illustration, providing loading dock space to unaffiliated long haul truckers who are simply looking for a place to rest for the night), Thames Street could bring another FED action seeking to terminate the lease for a violation of Section 3.

9

violation of the Section 29 Estoppel issue, not Section 3. But Thames Street's current position contradicts a careful and plain reading of Paragraph 21 of its 2018 Complaint, which provides as follows: "By reason of a Notice of Termination of Lease for failure to: (a) . . . ; (b) . . .; and (c) comply with Section 3 of the Lease . . ., Defendant's tenancy has been terminated." The sentence structure used by Thames Street in its own pleading clearly alleges termination for all the reasons recited. The Paragraph 21 reference to "See Exhibit H, Defendant's refusal to execute the Estoppel" merely refers the reader to an exhibit; it does not negate the clear meaning of the prior sentence.

As a corollary argument, Thames Street argues it could not have asserted Section 3 as a ground for termination, because Section 3 is subject to a 30 day cure period which had not expired as of the date the 2018 Complaint was filed. Thames Street correctly points out that its May 3, 2018 correspondence rejected Thames Street's interpretation of Section 3, and indicated Ocean Street was not going to change its practice. As a result, Thames Street did not need to wait for the 30 day cure period to run before asserting termination. *See TD Banknorth, N.A. v. Hawkins*, BCD-WB-CV-07-08, at *8-9 (Bus. & Consumer Ct. Aug. 14, 2009, Nivison, J.)(if Defendant refuses to cure, Plaintiff need not wait for cure period to run). Moreover, by the time of the 2018 trial, the 30 day cure period had long since lapsed, and Thames Street could have asserted a default under Section 3 as a basis for termination. *See Stone v. Dep't of Aviation*, 453 F.3d 1271, 1278 (10th Cir. 2006)(claim preclusion requires a plaintiff to join all claims, including those that will mature during the course of the litigation).

Thames Street next argues that because it did not put on any evidence at trial in 2018 concerning default under Section 3, that it cannot now be barred by *res judicata* from doing so in the current action. The argument is related to Thames Street's overall argument, stated in several forms, that because the 2018 proceeding was primarily concerned with the Estoppel Certificate issue (and no mention of the Section 3 issue was made in either the trial court or appellate decisions), that it should not now be barred from litigating the Section 3 issue.

The problem with these arguments is that they fail to account for the facet of claim preclusion that prevents a party from bringing any claim in a subsequent action that could have been brought in the original action. Here, Thames Street chose not to put on evidence concerning Ocean State's alleged default under Section 3 of the Lease. Ocean State, however, put on evidence pertaining to Section 3, and Thames Street could have done so had it wanted to. Moreover, Thames Street *did* bring a claim under Section 3 in the 2018 litigation; at trial it simply chose to focus on its Section 29 claim. Accordingly, the absence of a Section 3 discussion in either the trial or appellate court decisions is immaterial.

Thames Street next argues that because of the limited, statutory nature of an FED action, a trial court's judgment deciding the right of superior possession cannot be applied as a bar to adjudicating underlying contractual claims on the merits. Whatever the merits of this argument, it doesn't apply here. Thames Street's second action is a commercial FED, just like its first action. The only issue is who has superior right to possession of the Premises; as to that issue, Thames Street is barred from relitigating its Section 3 argument.

11

Thames Street concludes its arguments by contending that *res judicata* cannot be applied in an FED context to bar subsequent litigation over a continuing violation. The Court has already addressed this concern. Where, as here, the continuing violation is identical in all material respects to the violation asserted in the prior litigation, it is appropriate to apply claim preclusion.

CONCLUSION

For all these reasons, Ocean State's Motion to Dismiss is GRANTED, and judgment is entered for Ocean State on Thames Street's 2019 Complaint.[5]

So Ordered.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

December 20, 2019.

_____/s_____
Michael A. Duddy
Judge, Business and Consumer Docket

[5] The Court denies Ocean State's request for contractual attorney fees. As explained by the Superior Court in its appellate decision, a trial court in an FED action lacks authority to award contractual attorney fees. Ocean State can file an appropriate motion to bring the issue back to the Court's attention, in the event the Law Court decides the issue differently.