STATE OF MAINE                          BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                         DOCKET NO. BCDWB-CV-2020-19


OCEAN STATE JOB LOT OF          )
MAINE, 2017, LLC,               )
                                )
                    Plaintiff,  )       ORDER DENYING DEFENDANT'S
        v.                      )       MOTION FOR JUDGMENT ON
                                )       THE PLEADINGS
20 THAMES STREET, LLC,          )
and 122 PTIP, LLC,              )
                                )
                    Defendants. )


        Defendants 20 Thames Street, LLC and 122 PTIP (collectively "Thames Street"), through

their undersigned counsel, filed a Motion for Judgment on the Pleadings (the "Motion") pursuant

to M.R. Civ. P. 12(c) requesting the court dismiss Plaintiff Ocean State Job Lot of Maine 2017,

LLC's (herein after "Ocean State") claim for reimbursement of attorney fees relating to a 2018

Forced Entry and Detainer ("FED") Thames Street unsuccessfully brought against Ocean State

(the "2018 Attorney Fees claim"). Thames Street argues that because Ocean State did not bring its

2018 Attorneys Fees claim as part of a separate action pending before the Superior Court, Ocean

State's fee claim is barred by the doctrines of *res judicata* and abatement.  Thames Street also

argues that the 2018 FED Attorneys Fees claim should be barred by the doctrine of judicial

estoppel.[1]  For the reasons discussed below, the Court finds Ocean State's claims are not barred

by any of the doctrines set forth by Thames Street. The Motion is therefore DENIED.

---

[1] Thames Street did not assert the affirmative defense of judicial estoppel in its pleadings. *See* M.R. Civ. P. 8(c).
Accordingly, the issue of judicial estoppel is not properly before the Court on this Motion, and the Court denies the
judicial estoppel argument on that basis. *See* M.R. Civ. P. 12(c). To the extent it could be argued the defense is
somehow incorporated into the pleadings, and because Ocean State had an opportunity to respond to the argument and
did so, the Court also denies the judicial estoppel defense on the merits without treating the Motion as one for summary
judgment. *See id.*

## STANDARD OF REVIEW

When a motion for a judgment on the pleadings is filed by the defendant pursuant to M.R. Civ. P. 12(c), "only the legal sufficiency of the complaint is tested" and the "[d]efendant's motion for judgment on the pleadings is nothing more than a motion under M.R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted." *Wawenock, LLC v. DOT*, 2018 ME 83, ¶ 4, 187 A.3d 609 (quoting *Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988)). Therefore, a Rule 12(c) motion for judgment on the pleadings tests the legal sufficiency of the complaint in the same manner as a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6). *Id.* When reviewing the complaint, the court assumes that the factual allegations are true, examines the complaint in the light most favorable to plaintiff, and ascertains whether the complaint alleges the elements of a cause of action or facts entitling the plaintiff to relief on some legal theory[.]" *Donahue v. Berube*, No. CV-19-0099, 2019 Me. Super. LEXIS 92, at *3-4 (Sep. 11, 2019) (quoting *Cunningham*, 538 A.2d at 267); *See also Libby v. Roy,* No. PORSC-CV-16-0357, 2017 Me. Super. LEXIS 135, at *1 (July 3, 2017) ("The standard of review applicable to a motion for judgment on the pleadings under Rule 12(c) of the Maine Rules of Civil Procedure is similar to that on a Rule 12(b)(6) motion—whether the pleading to which the motion is directed, viewed in a light most favorable to the non-moving party, states a valid claim."). The legal sufficiency of the challenged complaint is a question of law. *See Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676, 679 ("The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law.").

Dismissal is not warranted "unless it is beyond doubt that no relief can be granted under any facts that might be proved to support the plaintiff's claim." *Donahue*, 2019 Me. Super. LEXIS 92, at *3-4 (quoting *Bowen v. Eastman*, 645 A.2d 5, 6 (Me. 1994)). To successfully oppose a

defendant's motion for judgment on the pleadings, a plaintiff need only plead facts, which the Court must take as true, sufficient to support a claim for relief under some legal theory. *Brown v. Sirois*, No. RE-02-001, 2002 Me. Super. LEXIS 65, *7 (Aug. 27, 2002).

Ordinarily, a defendant is not entitled to take advantage of an affirmative defense in presenting such a motion, because matters set forth in his answer are taken as denied or avoided. *Cunningham*, 538 A.2d at 267.M.R. Civ. P. 8(d). However, there is one narrow exception to the rule that affirmative defenses may not be invoked as a ground for dismissal when the complaint affirmatively demonstrates the existence and the applicability of the affirmative defense. *Id.* (citing *Robinson v. Washington County*, 529 A.2d 1357, 1361 (Me. 1987); *MacKerron v. Madura*, 445 A.2d 680, 682 (Me. 1982); *see also Sargent v. Sargent,* 622 A.2d 721, 723 (Me. 1993) ("A Rule 12(b)(6) motion is appropriate to raise the affirmative defense of *res judicata* only if the facts establishing the defense appear on the face of the complaint.").

If the court considers matters outside the pleadings, the motion is treated as one for summary judgment. M.R. Civ. P. 12(c). The court may, however, consider official public documents, documents that are central to the claim, and documents referred to in the complaint without converting the motion into a motion for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43.[2]

## PROCEDURAL AND FACTUAL BACKGROUND

---

[2] Ocean State opened the door for Thames Street's present challenge and presentation of documents involving *Ocean State Job Lot of Maine 2017, LLC v. 20 Thames Street LLC and 122 PTIPT LLC,* No. PORSCV-CV-2019-149 (the "Roof Action") when it referenced the "Roof Action" in paragraph 30 of the Complaint. Therefore, the Court may consider Roof Action filings and documents without converting this motion for judgment on the pleadings into a motion for summary judgment.

The procedural history of this case is critical to the analysis of the issues before the Court, therefore, in the interest of efficiency and clarity, the procedural history and facts are presented together.

Ocean State is a Maine limited liability company with its principal place of business in Falmouth, Maine. Plaintiff's Complaint ("Pl.'s Compl.") ¶ 1. Defendant Thames Street LLC is a Maine limited liability company with its principal place of business in Cumberland County, Maine and is managed by Jonathan Cohen. (Pl.'s Compl. ¶ 2.) Defendant 122 PTIP LLC is a Maine limited liability company with its principal place of business in Cumberland County, Maine and is managed by Joseph Soley. (Pl.'s Compl. ¶ 3.) Defendants collectively, hereinafter "Thames Street," are owners of a commercial property known as Falmouth Shopping Center (the "Shopping Center") located at 251 U.S. Route 1, Falmouth, Maine. (Pl.'s Compl. 4.) Thames Street acquired the Shopping Center on March 23, 2018 from Falmouth Realty Associates. (Pl.'s Compl. ¶¶ 4-5.)

Ocean State entered into a lease (the "Lease") with Falmouth Realty Associates for a unit at the Shopping Center on August 3, 2017. (Pl.'s Compl. ¶ 10; Pl.'s Compl. Ex. 1.) The Lease was for a term of approximately ten years, running until July 31, 2028, with three five-year extension terms with the last one expiring on July 31, 2043. *Id.* In May 2017, during the course of lease negotiations, Ocean State expressed concerns over an issue with the roof, which resulted in Section 2 of the Lease providing that the rented space was to be delivered weather tight. (Pl.'s Compl. ¶¶ 13-14; Pl.'s Compl. Ex. 1, p. 2-3.) The roof was not delivered to Ocean State as being weather tight, and Ocean State continued to communicate to its landlords at the time, Falmouth Reality Associates, that the roof was leaking. (Pl.'s Compl. ¶¶ 14-15.) Falmouth Reality Associates took action to make the necessary repairs. (Pl.'s Compl. ¶ 16.)

4

After the Lease was signed in August 2017, Ocean State invested significant resources into the Shopping Center. (Pl.'s Compl. ¶ 19.) Those resources included $600,000 for a space that it subleased to a gym, $800,000 for construction within the remaining 36,000 square feet, and $300,000 in store setup fixtures, for a total of $1.7 million.

In November 2017, Ocean State invoked its right under Section 38(c) of the Lease and requested a memorandum lease from Falmouth Reality Associates. (Pl.'s Compl. ¶¶ 17-18; Pl.'s Compl. Ex. 1, p. 25.) The underlying document was rejected by the Cumberland County Registry of Deeds, so Ocean State did not have an acceptable form of the memorandum of lease to file with the registry of deeds. (Pl.'s Compl. ¶ 18.)

Ocean State opened its store at the Shopping Center on November 15, 2017. Even after the store opened, the store continued to have issues with a leaking roof, which Falmouth Reality continued to address. (Pl.'s Compl. ¶¶ 20-21.)

On March 23, 2018, Thames Street acquired the Shopping Center from Falmouth Realty Associates. (Pl.'s Compl. ¶¶ 4-5.) Before Thames Street purchased the Shopping Center, it did not seek any estoppel certificate from Ocean State to investigate whether there were any issues with Ocean State's lease. (Pl.'s Compl. ¶ 23.)

***The 2018 FED Action***

Between April 4 and April 18, 2018, a Thames Street representative corresponded with multiple representatives from Ocean State via email regarding repairs to the fire alarm system, as well as the roof issue. (Pl.'s Compl. Ex. 3, at 3.) In the middle of the ongoing correspondences, Thames Street sent Ocean State an estoppel certificate and subordination agreement to review and execute on April 10, 2018. (Pl.'s Compl. Ex. 3, at 3.) Ocean State was requested to comply within

5

10 days in accordance with Sections 27 and 29 of the Lease.[3] *Id.* Ocean State's and Thames Street's agents had a phone conversation eight days after Ocean State had received the request. (Pl.'s Compl. Ex. 3, at 3-4.) Ocean State's agent insisted that Thames Street connect with their attorney to discuss the request. (Pl.'s Compl. Ex. 3, at 4-5.) Thames Street did not contact Ocean State's attorney, and instead sent Ocean State a notice of default and termination on April 25, 2018. (Pl.'s Compl. Ex. 3, at 5.) Ocean State responded by sending an estoppel certificate to Thames Street, which was received on April 27, 2018. *Id.* However, Thames Street found the estoppel certificate unacceptable. *Id.* Ocean State's attorney also informed Thames Street by letter on May 3, 2018 that Ocean State was disputing the notice of default and termination. *Id.*

Thames Street filed a one-count FED with the Portland District Court on May 7, 2018 against Ocean State. (Pl.'s Compl. ¶ 24; Pl.'s Compl. Ex. 2; Pl.'s Compl. Ex. 3, at 1.) The action was then transferred to the Business and Consumer Court (BCD) on May 22, 2018. (Pl.'s Compl. Ex. 3, at 1.). In the 2018 FED complaint, Thames Street alleged that Ocean State had breached the Lease by failing to sign and return an estoppel certificate, thus terminating the tenancy.[4] (Pl.'s Compl. Ex. 2, at 5.) A trial was held over the course of two and a half days on June 27-28 and half of July 16, 2018. (Pl.'s Compl. Ex. 3, at 1.) The parties were ordered to submit written arguments by July 30, 2018. (Pl.'s Compl. Ex. 3, at 2.)

---

[3] Section 29 of the Lease in full reads "Each party agrees, from time to time, within 10 days after request of the requesting party, to execute and deliver to the requesting party, or the requesting party's designee, any estoppel certificate requested by the other, stating, if true, that this Lease is in full force and effect, the date to which rent has been paid, that the requesting party is not in default hereunder (or specifying in detail the nature of the requesting party's default), the termination date of the Lease and such other matters pertaining to this Lease as may be reasonably requested by the requesting party. Each party's obligation to furnish each estoppel certificate in a timely fashion is a material inducement for each party's execution of this Lease. No cure or grace period provided in this Lease shall apply to each party's obligation to timely delivery an estoppel certificate."

[4] In the 2018 FED, Thames Street also alleged that Ocean State breached the Lease by failing to sign and return a Nondisturbance and Attornment Agreement; provide evidence of insurance naming Ocean State as an additional insured; and comply with Section 3 of the Lease by allowing a trailer to remain at the loading dock for a period of time in excess of overnight or as otherwise may be permitted by the Lease. However, these claims are irrelevant to Thames Street's current arguments as to why Ocean State's claims to attorney fees stemming from the 2018 FED are barred, so this Court need not address them.

6

Under Section 29 of the Lease, "any estoppel certificate requested by the other [party], stating, *if true*, [] may *be reasonably requested* by the requesting party." (Pl.'s Compl. Ex. 3, at 5-6) (emphasis added). When requesting the estoppel certificate, Thames Street was "required to furnish a true and accurate proposed estoppel certificate." (Pl.'s Compl. Ex. 3, at 6.) The issue before the BCD in the 2018 FED Action (hereinafter the "2018 FED BCD") was whether Ocean State's failure to return the form of estoppel certificate provided by Thames Street within Thames Street's deadline constituted a non-curable default under the lease that entitled Thames Street to immediate possession of the leased property. (Pl.'s Compl. Ex. 3, at 5-6.) Thames Street was required to furnish a true and accurate proposed estoppel certificate because the brief 10-day period would be insufficient to allow discussions or negotiations. (Pl.'s Compl. Ex. 3, at 6.) The estoppel certificate also required that requests for statements requiring qualification be "reasonable requests". (Pl.'s Compl. Ex. 3, at 7.) Therefore, the question turned on whether the estoppel certificate request was both true and reasonable. (Pl.'s Compl. Ex. 3, at 6-10.)

The 2018 FED BCD issued an August 14, 2018 judgment on the 2018 FED Action finding in favor of Ocean State. *See 20 Thames Street LLC, et al. v. Ocean State Job Lot of Maine 2017, LLC*, BCD-SA-2018-01 (Bus. & Consumer Ct. Aug. 14, 2018, *Mulhern, J.*) (also referred to as "Pl.'s Compl. Ex. 3"). In its finding, the 2018 FED BCD found that the estoppel certificate provided by Thames Street included at least three factual inaccuracies. (Pl.'s Compl. Ex. 3, at 7.) The 2018 FED BCD also found many of the requests to be unreasonable because it was unreasonable for Thames Street to reasonably expect Ocean State to sign and return the estoppel certificate without further discussions. (Pl.'s Compl. Ex. 3, at 8-9.) The ongoing issues with the roof were the grounds of finding two of the requested statements to be unreasonable. (Pl.'s Compl. Ex. 3, at 8.) Thames Street wanted Ocean State to affirm that the Landlord (Thames Street) was in

7

compliance with the Lease and had performed all items of an executory nature; and that to the best of Ocean State's knowledge Landlord was not in default, present or future. *Id.* This was deemed an unreasonable request because the "ancillary issue" concerning the roof was still in dispute. *Id.* Notably, the 2018 FED BCD did not resolve the roof issue or include language to indicate which party it would have found in favor of on the subject. (Pl.'s Compl. Ex. 3.) Finally, the 2018 FED BCD declared Ocean State the prevailing party entitled to recover attorney fees under Section 38(m) of the Lease. (Pl.'s Compl. Ex. 3, at 12.) The 2018 FED BCD awarded attorney fees and costs amounting to $216,651.06 on September 20, 2018. (Pl.'s Compl. Ex. 4.) The 2018 FED BCD also noted that had Thames Street won the 2018 FED, it could have cost Ocean State approximately $4.5 million. *Id.* at 2.

On October 10, 2018, Thames Street filed a timely appeal of the 2018 FED BCD's judgment on the 2018 FED and the award of attorney fees with the Superior Court. (Pl.'s Compl. Ex. 5.) On the issue of the attorney fees, Thames Street raised three arguments: (1) the 2018 FED Court was not authorized, in a forcible entry and detainer action (FED), to decide anything beyond the issue of whether Thames Street was entitled to immediate possession of the premises; (2) the FED action was not litigation "to enforce the terms and provisions of the Lease" within the meaning of Section 38(m); and (3) the 2018 FED BCD abused its discretion in awarding $206,076 in attorney fees- which Thames Street contended was excessive. (Pl.'s Compl. Ex. 5, at 11.)

The Superior Court (Cumberland County, *Warren, J.*) issued its judgment on June 20, 2019 and found that the BCD, sitting as the District Court in an FED action, "did not have the authority to award attorney fee's pursuant to Section 38(m) of the Lease" because FED actions are limited to the singular issue of which party has the right to immediate possession. (Pl.'s Compl. Ex. 5, at 12.) Due to the narrow issue before a court in an FED, the 2018 FED BCD lacked subject matter

8

jurisdiction to award attorney fees in a FED action under the Lease, so the award was vacated. (Pl.'s Compl. Ex. 5, at 13.) Since the underlying judgment was invalidated due to lack of subject matter jurisdiction, the Superior Court did not need to reach the questions of whether Section 38(m) of the lease was inapplicable to the FED or if the attorney fees were excessive. *Id.* The Superior Court affirmed the FED judgment in favor of Ocean State and affirmed the award of $10,575.06 in costs. (Pl.'s Compl. Ex. 5, at 14.)

Ocean State appealed the Superior Court's judgment to vacate attorney fees to the Law Court. (Pl.'s Compl. Ex. 6.) On May 5, 2020 the Law Court affirmed the Superior Court's judgment that the award of attorney fees was beyond the scope of the BCD's jurisdiction while sitting for a FED action. *Id.*

*Roof Action[5]:*

On March 28, 2019, seven months after the 2018 FED BCD ruled in favor of Ocean State on the merits of the 2018 FED and three months before the Superior Court issued its judgment affirming that ruling, Thames Street presented Ocean State with a Common Area Maintenance and Real Estate Tax Reconciliation for 2018 that included $49,123.99 for roof repair costs. (Pl.'s Opp.'n to Def.'s Mot. J. Plead. Ex. 2, at 2.) Ocean State requested Thames Street execute a memorandum of lease on multiple occasions but Thames Street refused because (1) at all times a memorandum of lease was requested, the parties were engaged in eviction proceedings, and (2) Ocean State's request did not comply with the requirements of the lease. (Pl.'s Opp.'n to Def.'s Mot. J. Plead. Att. 2, at 2.) On April 25, 2019, Ocean State filed an action against Thames Street

---

[5] Nothing in this order should or shall be construed as this Court forming an opinion on or adjudicating any of the facts or claims involved in the Roof Action, which is pending before a separate court. The sole purpose of this Court discussing facts regarding the Roof Action is to assist the Court in its analysis of the facts as required to determine if Thames Street's arguments hold merit. The Court has excluded facts that do not assist in its narrowly tailored analysis on the issues of whether Ocean State's claims for 2018 FED Attorney Fees are barred by *res judicata*, abatement, and judicial estoppel.

(herein after the "Roof Action"), *Ocean State Job Lot of Maine 2017, LLC, v. 20 Thames Street LLC and 122 PTIP LLC*, Docket No. PORSC-CV-2019-149 (*see* Pl.'s Opp.'n to Def.'s Mot. J. Plead. Att. 1.) (Pl.'s Compl. ¶ 30.) In the Roof Action, Ocean State alleges five counts: Count I, declaratory judgment that Ocean State is not responsible for paying for the roof repairs; Count II, declaratory judgment that Thames Street must execute a memorandum of lease; Count III, a declaratory judgment that the lease is not terminated; Count IV, breach of contract when Thames Street Thames Street required Ocean State to pay for roof repairs; and Count V, breach of contract when Thames Street did not execute a memorandum of lease. (Pl.'s Opp.'n to Def.'s Mot. J. Plead. Ex. 2, at 3.)

Thames Street submitted a motion for summary judgment on March 3, 2020. (Def.'s Mot. J. Plead. Ex. G.) Ocean State submitted its own motion for summary judgment on March 4, 2020. (Def.'s Mot. J. Plead. Ex. E.) The Superior Court (Cumberland County, *McKeon, J.*) issued an order on July 29, 2020 which denied both parties' requests for summary judgment on the roof dispute and kept the existence and termination of the lease under advisement while the 2019 FED Action[6] works its way through the appeal process. (Pl.'s Opp.'n to Def.'s Mot. J. Plead. Att. 2, at 10.)

The Roof Action, which is not before this Court, still has matters open and pending before the Superior Court.[7]

---

[6] On October 24, 2019, six months after Ocean State filed the Roof Action, Thames Street filed a second FED (the "2019 FED Action"). (Pl.'s Compl. ¶ 31; Pl.'s Compl. Ex. 7.) The 2019 FED Action was dismissed by the BCD on December 20, 2019 under the doctrine of res judicata. (Pl.'s Compl. ¶ 33; Pl.'s Compl. Ex. 8.) The 2019 FED Action is currently on appeal. *Id.* Due to the repeat FED action being on appeal, Thames Street has repeatedly claimed that they are not required to comply with the terms of the Lease causing a dispute over whether the Lease remains in effect. (Pl.'s Compl. Ex. 34.) The claim for the 2019 FED Action attorney fees was not included in Thames Street's Motion, therefore the Court need not delve deeper into the facts surrounding the 2019 FED Action.
[7] On January 21, 2021, Ocean State filed an application to transfer the Roof Action to the Business and Consumer Docket ("BCD"), in order to consolidate the case with the FED Attorney Fee action. This Court denied the application because the Superior Court's July 29, 2020 order left issues open and under advisement before it.

***Claim for 2018 FED Attorney Fees: The Claim Presently at Bar***

The case at bar includes claims for attorney fees stemming from both the 2018 and 2019 FED Actions. (Pl.'s Comp.) Plaintiff filed their Complaint on May 27, 2020, twenty-two days after the Law Court affirmed the Superior Court's decision vacating the original award of the 2018 FED Attorney Fees. *Id.* Notably, the Law Court's decision was issued one year after the Roof Action was filed and sixty-two days after the parties had filed their cross motions for summary judgment. The Complaint has two counts: Count I, Breach of Contract for Attorney Fee's Arising from the 2018 FED; and Count II, Breach of Contract for Attorney Fee's Arising from the 2019 FED. Ocean State has requested the following relief from this Court (Pl.'s Compl. 11.):

1. A court order directing Thames Street to pay Ocean State's attorneys' fees arising from the 2018 FED action. *Id.* at ¶ 1.
2. A court order directing Thames Street to pay Ocean State's attorneys' fees arising from the 2019 FED action. *Id.* at ¶ 2.
3. A court award to Ocean State for damages in an amount to be determined at trial. *Id.* at ¶ 3.
4. A declaration stating Ocean State as the prevailing party in this action and awarding it "reasonably attorney fees, filing fees, and court costs" pursuant to Section 38(m) of the Lease. *Id.* at ¶ 4.
5. Awards to Ocean State for such other relief the Court deems just and equitable. *Id.* at ¶ 5.

No other relief is sought in the case presently before the Court.

On September 14, 2020, the Court granted Ocean State's Motion for Attachment after finding that Ocean State is more likely than not to succeed on the merits of its claims, and that there is no security available to satisfy the judgment. *See Order Granting Plaintiff's Motion for Attachment and Attachment on Trustee Process* (September 14, 2020).

The underlying question in the current case at bar is whether Section 38(m) of the Lease applies to FED actions. Section 38(m) reads "[i]n the event either party hereto initiates litigation to enforce the terms and provisions of this Lease, the non-prevailing party in such action shall

11

reimburse the prevailing party for its reasonable attorney's fees, filing fee, and court costs." (Pl.'s Compl. ¶ 12, Pl.'s Compl. Ex. 1, at 26.) Ocean State prevailed in both the 2018 and 2019 FED Actions, but the 2019 FED Action has been appealed by Thames Street. (Pl.'s Compl. ¶ 33.)

The question presently before the Court by way of Thames Street's Motion is whether Ocean State's claim to the 2018 Attorney Fees is barred by *res judicata,* abatement, and judicial estoppel. (Def.'s Mot. J. Plead.)

**ANALYSIS**[8]

Thames Street does not attack the viability of Ocean State's claims or legal theory in the Motion. Instead, Thames Street asserts the claims are barred by the doctrines of *res judicata*, abatement, and judicial estoppel. Since Thames Street has not attacked the viability of the claims themselves, the Court, as a preliminary matter, finds that Ocean State has plead facts, which the Court must take as true, sufficient to support a claim for its 2018 FED Attorney Fees under its proffered breach of contract legal theory. Therefore, the Court will focus its analysis on the doctrines invoked by Thames Street to determine if Ocean State has stated a claim in which relief may be granted.

## I.    Res Judicata

"The doctrine of *res judicata* prevents the relitigation of matters already decided." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097. Parties may not reassert claims on the same legal mission against the same opponent to secure a remedy previously denied. *Id.*

---

[8] The Court largely addressed Thames Street's arguments that Ocean State's attorney fee claim is barred by *res judicata* and abatement in its September 14, 2020 Order for Attachment. However, since the standard of review is now arguably different (a Motion for Judgment on the Pleadings versus a Motion for Attachment), and because of the addition of the argument for judicial estoppel, the Court once again addresses Thames Street's arguments. The outcome of the analysis is no different.

(citing *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 139). *Res judicata* consists of two components: issue preclusion and claim preclusion. *Id.*

Ocean State argues that because Ocean State could have included its claims for its 2018 FED Attorney Fees in the Roof Action, the 2018 FED Action Attorney Fees claim should be barred by *res judicata*. Thames Street's argument on *res judicata* touches on issues relating to both the claim and issues being brought, therefore, the Court shall apply both the claim preclusion and issue preclusion analysis to the facts.

a. *Claim Preclusion*

"Claim preclusion prevents relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 139.

i. *Same Parties*

The parties are the same in both the present case and the Roof Action. The first element is satisfied.

ii. *Valid Final Judgment Entered in Prior Litigation*

A valid judgment entered by a court, if not appealed from, generally becomes *res judicata* and is not subject to later collateral attack. *Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478, 481 (Me. 1989). "[A] judgment rendered without subject matter jurisdiction is invalid and has no *res judicata* effect." *Id.* (citing *S.D. Warren Co. v. Maine Cent. R.R. Co.,* 126 Me. 23, 25, 135 A. 526 (1926)).

The Complaint does not set forth any arguments or claims that attack or seek to circumvent a valid judgment. The 2018 FED Court's original award of for the 2018 FED Attorney Fees was

vacated due to a lack of subject matter jurisdiction by the Superior Court, and the Superior Court's judgment was affirmed by the Law Court.[9] Furthermore, the Roof Action is still pending so there is no final judgment, valid or invalid, to risk the imposition of a *res judicata* effect on the claims to the 2018 FED. Therefore, there is no valid judgment relating to the 2018 attorney fees and the second element of claim preclusion is not satisfied.

### iii. *Matters Presented Were or Could Have Been Litigated in Prior Action*

To determine whether a claim is barred, courts use a transactional test, "examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 8, 940 A.2d 1097 (quoting *Norton v. Town of Long Island*, 2005 ME 109, ¶ 17, 883 A.2d 889, 895; determining that claim preclusion does not apply when the first action was an appeal from an entry of declaratory judgment and the second action an appeal of a municipal decision). The transactional test, phrased another way, is the court's consideration of "[w]hat factual grouping constitutes a transaction [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they [form] a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 8, 81 A.3d 371 (quoting *KeyBank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 17, 758 A.2d 528.) The claim may still be precluded even if the second action "relies

---

[9] Thames Street argues that Ocean State's attachment of pleadings and affidavits from the 2018 FED Action is evidence that the current pursuit for attorney fees is a "second bite at the apple." The Court disagrees. For Ocean State to prevail on the attorney fees claim, it must prove that the 2018 FED Action was an action to enforce the terms of the lease. Attaching documents relating to the 2018 FED Action is not only logical but was also necessary for Ocean State to demonstrate a valid judgment had not yet been rendered on the claim.

on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case." *Id.*

Claim preclusion prevents a party from relitigating "issues that were tried, or that may have been tried, between the same parties or their privies in an earlier suit on the same cause of action." *Norton,* 2005 ME 109, ¶ 17, 883 A.2d 889 (finding a claim to not be precluded because the federal court would have declined to exercise jurisdiction over it). Under the transactional test, however, a claim can only be precluded if bringing the claim was required because the claims involved the same "cause of action." *See Wilmington Tr. Co,* 2013 ME 94, ¶ 12, 81 A.3d 371 (finding that although a party alleged a breach of the same note and mortgage pursuant to which the plaintiff was seeking relief from, the plaintiff's allegations of breach was derived from a different term of the mortgage based on wholly separate conduct so the claim was not precluded.) Subsequent defaults on contracts are not barred by claim preclusion by previous litigation on the contract. *Id.*

Here, the cause of actions in the 2018 Attorney Fees Action and the Roof Action are not the same. Ocean State's 2018 Attorney Fees claim arises from Ocean State prevailing against Thames Street in the 2018 FED Action. In contrast, the causes of action contained in the Roof Action arise from three very different factual grounds: (1) Thames Street making Ocean State pay for roof repairs, (2) Thames Street's repeated denial of Ocean State's request for a memorandum of lease, and (3) Thames Street's repeated assertion that the Lease has been voided. While all these actions have some commonalities,[10] they do not arise out of the same nucleus of operative face.

---

[10] In Ocean State's Motion for Summary Judgment in the Roof Action, Ocean State asserted that a lease exists and has existed between the parties, and that the Lease requires Thames Street to deliver both a watertight roof and a memorandum of Lease. (Def.'s Mot. J. Plead. 5.) Ocean State further asserted that all those points were litigated, tried, and determined in the 2018 FED, which Thames Street lost. *Id.* Thames Street takes this as evidence that all the claims for both the 2018 Attorney Fees Claim and the Roof Action arise out of a singular nucleus of operative fact. Notwithstanding Ocean State's summary judgment argument to the contrary, the Roof Action facts and issues could not have been, and were not, litigated in the 2018 FED, and vice versa. The Court does not find Thames Street's exploitation of Ocean State's poor phraseology convincing.

The distinct causes of action giving rise to the 2018 Attorney Fees claim and the Roof Action are more dissimilar than they are similar. This means that the claim for the 2018 FED Attorney Fees could have been, but was not required to be, brought with the Roof Action.

Further, temporally, the actions leading to the claims do not align. The Roof Action's causes of action all either stem from actions that could not be litigated in the 2018 FED hearing due to the limited nature of FED actions[11], distinct acts outside of the 2018 FED Action [12], or arose after the 2018 FED Action[13] was finished being litigated by the 2018 FED Court. Since claims caused by subsequent breaches of the same contract are not barred by past litigation, it is only logical that attorney fees from past litigation be seen as separate and independent causes of action from the causes of actions arising from subsequent breaches, especially when different sections in the contract govern the dispute.

The underlying actions are separate breaches of contract because they each include separate clauses under the Lease, each of which gives rise to an independent claim. The 2018 Attorney Fees Action arises from Section 38(m) of the Lease. The Roof Action arises from Sections 2 and 38(c) of the Lease, as well as whether the Lease is still valid after the eviction attempts. Regardless of how the Superior Court rules on the Roof Action, the question of whether Section 38(m) of the Lease applies to FED actions will still be a valid question properly brought before a court.

---

[11] In the context of a FED action, claims for breach of contract may not be asserted unless authorized by the statute. *20 Thames St. LLC v. Ocean State Job Lot of Me. 2017, LLC*, 2020 ME 55, ¶ 6, 231 A.3d 426 (citing M.R. Civ. P. 80D(g) "Forcible entry and detainer actions shall not be joined with any other action, nor shall a defendant in such action file any counterclaim.") Only the issue of who has a right to immediate possession of real property to the exclusion of another can be brought in a FED action; no additional claims are allowed. *Id.* FED actions are summary proceedings, narrowly defined by statute and constrained by rules of court. *Id.* at ¶ 12. Section 6017 authorizes only a narrow category of claims outside possession to be pursued FEDs and does not include contract claims for attorney fees not incurred until and through the litigation. *Id.* Therefore, claims regarding attorney fees, validity of the Lease after the conclusion the 2018 FED, a memorandum of Lease, and a determination of which party is responsible for roof repairs, could not have been litigated with the initial 2018 FED.

[12] For example, repeatedly refusing multiple requests for a memorandum of lease on multiple, separate occasions.

[13] Ocean State was charged for the roof repairs after the 2018 FED Action had been litigated in the BCD.

Finally, from an objective perspective, Ocean State had very different motivation and was seeking redress for different basic wrongs when it filed the two separate actions. *See Wilmington Tr. Co.*, 2013 ME 94, ¶ 8. Ocean State filed the 2018 Attorney Fees action for one purpose, to seek attorney fees it incurred defending against the 2018 FED. In contrast, Ocean State's motivation with the Roof Action is to seek resolution of non-FED related Lease disputes and obtain remedies such as roof repair costs, a memorandum of lease it believes it is entitled to, and a court declaration that its lease with Thames Street is still valid. The motivation, underlying basic wrongs, and desired relief between the two actions are very different. The actions do not form a convenient trial unit and can and should be appropriately handled in different actions. *Id.*

For the reasons above, after examining the aggregate of connected operative facts, the Court finds that while the claims could have been handled together (albeit inconveniently)[14] for purposes of trial, the claims are not founded upon the same transactions, do not arise out of the same nucleus of operative facts, and do not seek redress for essentially the same basic wrongs. Therefore, the Court finds that the third element of claim preclusion is also unmet.

b. *Issue Preclusion*

"Issue preclusion, or collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Portland Water Dist.*, 2008 ME 23, ¶ 9, 940 A.2d 1097 (quoting *Macomber*, 2003 ME 121, ¶ 22, 834 A.2d at 138-39) (internal quotations omitted). Claim preclusion is focused on the claims set forth in the prior proceeding, but collateral estoppel concerns factual issues, and applies even when the two

_____

[14] Ocean State did seek consolidation of the two actions, but due to the Roof Action's more advanced procedural stage and the Superior Court still having Roof Action issues pending before it this Court denied the application to transfer the Roof Action to the BCD.

17

proceedings offer different types of remedies. *Id.* "Collateral estoppel applies when (1) the identical factual issue was decided by a prior final judgment, and (2) the party to be estopped had an opportunity and an incentive to litigate the issue at the prior proceeding." *State v. Hughes,* 2004 ME 141, ¶ 5, 863 A.2d 266.

The party who asserts collateral estoppel bears the burden of establishing that the party to be estopped had a fair opportunity to litigate the issue in the prior proceeding. *Van Houten v. Harco Constr., Inc.*, 655 A.2d 331, 333-34 (Me. 1995). However, it is "not sufficient that the issue might have been litigated, the party asserting collateral estoppel must show that the issue was "actually litigated" in the prior proceeding. *Montgomery v. Spinglass Mgmt. Group*, No. CV-09-089, 2010 Me. Super. LEXIS 18, *11 (Feb. 11, 2010) (citing *Macomber*, 2003 ME 121, ¶ 25, 834 A.2d 131, 140.) Actual litigation of an issue does not mean that the issues had to have been contested in the prior action, but rather, in issue preclusion, extends to factual issues decided by consent or default, as long as the issue was actually determined. *Id.* (citing *Butler v. Mooers*, 2001 ME 56, ¶ 8, 771 A.2d 1034, 1037). A court's findings of facts may be applicable to the theory of issue preclusion. *Id.* (citing *Cianchette v. Verrier*, 155 Me. 74, 95, 151 A.2d 502, 513 (1959)).

Thames Street asserts that because Ocean State was able to receive approval to bring claims involving issues still on appeal in the Roof Action, that it should have included the 2018 Attorney Fees claims even though that issue was also on appeal. Further, Thames Street argues "[t]he issues in the two cases are not identical only because Ocean State purposely omitted the attorneys' fees issue from the Roof Action." (Def.'s Reply in Sup. of Def.'s Mot. J. Plead. 3) Neither of these arguments are persuasive because they do not meet the standard for issue preclusion.

First, as explained under the claim preclusion analysis, there is no final prior judgment in the Roof Action or in the 2018 FED Action that precludes the issue raised in the 2018 Attorney

18

Fees Claim from being litigated here. Therefore, issue preclusion fails on the second element. However, that is not the only factor that prevents issue preclusion from applying.

The only issues before the 2018 FED Court were (1) was the certificate estoppel certificate true and the request reasonable; and (2) if so, did Ocean States failure to comply constitute a breach of the Lease entitling Thames Street to immediate possession of the property. Given the limited nature of the scope of the 2018 FED inquiry, the 2018 FED BCD made no factual findings on the issue of the roof. The 2018 FED BCD simple determined that while a dispute over the roof was ongoing between the parties, it was unreasonable for Thames Street to request Ocean State sign an estoppel certificate declaring Thames Street was in full performance under the Lease. The 2018 FED BCD expressly called the roof dispute an "ancillary issue" and commented that regardless of who prevailed on the matter, the estoppel request was unreasonable. The resulting attorney fees, the validity of the Lease after the 2018 FED, properness of Ocean State's memorandum of lease requests, and the dispute roof repairs were not, and could not have been issues actually litigated in the 2018 FED because they fall outside the scope of a FED proceeding. Therefore, Ocean State did not have a fair opportunity to actually litigate the ancillary issues.

Next, even if the Roof Action were already resolved, the facts do not intersect enough to cause issue preclusion. The facts in common between the Roof Action and the claim 2018 FED Attorney Fee claims are: the Lease as the underlying contract; the parties in this action are or have been parties to the Lease; Thames Street brought an FED against Ocean State in 2018; and Ocean State prevailed in the 2018 FED Action. The issues to be litigated in the two actions are separate. The only issues before this Court in regards to the 2018 FED Attorney Fees claims are whether an FED action is an action to enforce the terms of the Lease, and if so whether Ocean State, as the prevailing party, is entitled to attorney fees under Section 38(m) of the Lease. The issues in the

19

Roof Action include: (1) determining which party is responsible for the roof repair costs under the lease; (2) whether Ocean State is entitled to a memorandum; and (3) whether the Lease is still valid after Thames Street's two eviction attempts. Due to the stark difference in the issues, a judgment or factual findings on the Roof Action's issues will not bar the litigation of the facts involved in the 2018 FED Attorney Fees Claim.

Finally, Ocean State did not have an incentive to file its claims for the 2018 FED Attorney with the Roof Action because, as Thames Street points out, the 2018 FED *and* attorney fees were on appeal. When Ocean State commenced the Roof Action, the Superior Court had not yet vacated the award for attorney fees and did not vacate the award for attorney fees until three months later. Ocean State, however, did have an incentive to file the Roof Action when it did because Thames Street required Ocean State to pay for roof repairs and was threatening Ocean State's investments by denying the existence of the Lease. Further, by the time the Law Court issued its judgment affirming the Superior Court's judgment vacating the award for attorney fees, Ocean State could not amend its Roof Action to include the 2018 FED Attorney Fees claim because the parties had already filed cross motions for summary judgment in the Roof Action. Ocean State was under no obligation to wait to see if the Superior Court would vacate the 2018 FED BCD's original award for attorney fees before moving to try to resolve the Roof Action issues, nor were they barred from bringing an independent action for attorney fees from a previous litigation simply because the Roof Action was beyond amendment.

The Court finds that Ocean State: did not have a fair opportunity to litigate the 2018 Attorney Fee claim in any prior action that resulted in a valid final judgment on the matter; did not have an incentive to bring the 2018 Attorney Fee claim with the Roof Action; and has not raised

any issues in its bid for attorney fees that are also contested in the Roof Action. Therefore, there can be no issue preclusion.

Simply put, just because Ocean State could have waited to file the Roof Action until the 2018 FED Action was done on appeal, does not mean it was required too. Thames Street's argument that the 2018 Attorney Fees Claim is barred by *res judicata* is meritless.

## II. Abatement

"Writs may be abated on trial of issues of fact, and for causes which would prevent the maintenance of any suit for the same cause of action, between the same parties on the same facts." *Donnell v. Gatchell*, 38 Me. 217, 218-19 (1854). "The plea of the pendency of a prior suit, between the same parties for the *same cause of action*, will undoubtedly, if duly pleaded, abate the suit in which it is filed." *Fahy v. Brannagan*, 56 Me. 42, 43 (1868)(emphasis added). When two actions are for the *same cause of action*, even when different in form, and a judgment in either would have been a good bar to the other, both should be abated. *See Garoufalis v. Elenike Orthodox Cenotis Agaia Trias*, 119 Me. 452, 454, 111 A. 757, 758 (1920); *see also Lucas v. Porter*, 2008 ND 160, ¶ 10, 755 N.W.2d 88, 95 ("a prior pending action may be pleaded as a bar to a subsequent action where a final judgment in the prior action, pleaded in abatement, would support the application of *res judicata* to the issues involved in the second action.) "[W]here the second suit was commenced by the plaintiff while the first suit was pending, both in the same court, [the Law Court has] approved the overruling of a plea in abatement, where upon inquiry, it was determined that the second suit was not vexatious but was necessary to protect and secure the plaintiff's full rights." *Fitch v. Whaples*, 220 A.2d 170, 173 (Me. 1966).

For the same reasons the 2018 FED Attorney Fees claim is not barred by *res judicata,* the claim is also not abated due to the pendency of the Roof Action. Further, the Court does not find the

commencement of the action to recoup the 2018 FED Attorney Fees or the commencement of Roof Action to be vexatious. To the contrary, the Court finds that two actions were necessary to protect and secure Ocean State's full rights under the Lease. Whether Ocean State will prevail in either the suit is yet to be determined, but Ocean State is well within its rights to bring the actions separately. Therefore, the action is not abated.

## III. *Judicial Estoppel*

Judicial estoppel is the doctrine which "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Me. Educ. Ass'n v. Me. Cmty. Coll. Sys. Bd. of Trs.*, 2007 ME 70, ¶ 16, 923 A.2d 914 (citing *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). In order to judicially estop a party from "asserting a position in a subsequent legal action (1) the position asserted in the subsequent legal action must be clearly inconsistent with a previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of [its] change of position in the subsequent action." *Id.* at ¶ 18. The purpose of the doctrine is to protect the integrity of the judicial process. *Id.* at ¶ 17.

Thames Street argues that due to Ocean State successfully arguing to the Superior Court that it should be allowed to bring claims in the Roof Action related to the 2018 FED Action while the 2018 FED Action was on appeal, it is inconsistent for Ocean State to now argue that it would have been improper for them to include a claim for the attorney fees while the attorney fees award was on appeal. Thames Street's argument misses the mark because Ocean State was only permitted to bring claims in the Roof Action by the Superior Court because of the exceptional circumstances and injustice a denial of its request would have imposed on Ocean State due to a quagmire of

22

Thames Street's creation. The Roof Action was not filed until after Thames Street required Ocean State to pay for roof repairs despite the 2018 FED judgment being on appeal. Thames Street does not get to act against Ocean State while an issue is still on appeal and then turn around and use the pending appeal as a shield from legal action taken in direct response to its initial action. This Court would risk subjecting Ocean State to an injustice if it were to accept Thames Street's argument. Judicial estoppel is designed to protect the judicial system, not to use it for tactical advantage.

Further, when the Roof Action was filed, the Superior Court had not yet vacated the original award for the 2018 FED attorney fees so Ocean State did not yet have a claim to file. Once the award was vacated, Ocean State exercised its right to appeal to the Law Court. While Ocean State was awaiting the Law Court's decision and clarification on the proper venue to seek its attorney fees, the Roof Action moved beyond the point in which it would have been procedurally permissible for Ocean State to amend its Roof Action complaint to add the 2018 FED Attorney Fees claim. Further, had the Law Court reversed the Superior Court, Ocean State would not have had a claim to bring for the 2018 Attorney Fees. Waiting for resolution of the appeal process for the 2018 FED Attorney Fees claim was reasonable, as was moving forward with the Roof Action due to the extreme economic risk to which Thames Street was exposing Ocean State. Ocean State's positions and resulting actions are clearly not inconsistent and thus do not bar the 2018 Attorney Fees claim by judicial estoppel.[15]

## CONCLUSION

For the foregoing reasons above, Thames Street's Motion for a Judgment on the Pleadings on the grounds of *res judicata*, abatement, and judicial estoppel is DENIED.

---

[15] Since Ocean State's positions are not inconsistent, the Court need not address the other two elements of judicial estoppel.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated: **May 24, 2021**

_____
Judge, Business and Consumer Court

OCEAN STATE JOB LOT of MAINE 2017, LLC,

     *Plaintiff(s)*

*v.*

20 THAMES ST.,
and 122 PTIP, LLC

     *Defendant(s)*

| Party Name: | Attorney Name: |
| --- | --- |
| *Ocean State Job Lot of Maine 2017, LLC* | **Seth Brewster, Esq.**<br>**Micha Smart, Esq.**<br>Eaton Peabody<br>PO BOX 15235<br>100 Middle Street<br>Portland, ME 04112-5235 |
| *20 Thames Street, LLC, and 122 PTIP, LLC.* | **Glenn Israel, Esq.**<br>Bernstein Shur Sawyer, Nelson<br>PO BOX 9729<br>Portland ME, 04104-5029 |

OCEAN STATE JOB LOT OF
MAINE, 2017, LLC,

     Plaintiff,

   v.

20 THAMES STREET, LLC,
and 122 PTIP, LLC,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING PLAINTIFF'S
MOTION FOR ATTACHMENT AND
ATTACHMENT ON TRUSTEE
PROCESS

Before the Court is the motion for attachment and attachment on trustee process brought by Plaintiff Ocean State Job Lot of Maine, 2017, LLC ("Ocean State"). In its motion, Ocean State seeks attachment in the amount of $444,033.09, which reflects the amount of attorney fees it incurred defending against Defendants' two unsuccessful commercial Forcible Entry and Detainer actions. Ocean State asserts that it is more likely than not to succeed on its breach of contract claim, and is without sufficient security to satisfy a judgment in its favor. In opposition, Defendants argue that there is security to satisfy an eventual judgment, the lease provision at issue in this matter is inapplicable, Ocean State improperly split its cause of action against Defendants, and Ocean State's attorney fees are unreasonable. Ocean State's motion for attachment is supported by its Complaint and attached exhibits ("Complaint"), and the Supplemental Affidavit of Micah A. Smart, Esq., ("Smart Aff.") and its attached exhibits. For the following reasons, the Court grants Ocean State's motion.

## FACTUAL BACKGROUND

Ocean State is a discount retailer that operates locations throughout New England and the Tri-State area, including a location in Falmouth, Maine. Smart Aff. ¶¶ 3. Ocean State's Falmouth

1

location is located at the Falmouth Shopping Center (the "Shopping Center"). *See* Smart Aff. ¶ 10. Ocean State's lease at the Shopping Center began on August 3, 2017, when the parties entered into a lease for a term of approximately ten years (until July 31, 2028), with three separate five-year extension terms, the last of which expires on July 31, 2043 ("the Lease"). *Id.* At the time Ocean State agreed to the Lease, Falmouth Realty Associates owned the Shopping Center. Smart Aff. ¶ 8. However, the Shopping Center was later sold to Defendants on March 23, 2018. Smart Aff. ¶ 21. Defendants began a series of attempts to evict Ocean State approximately six weeks later. Smart Aff. ¶ 23; Compl., Ex.2.

First, in May 2018, Defendants began a Forcible Entry and Detainer ("FED") action asserting that Ocean State had refused to provide an estoppel certificate and had left trailers parked at a loading dock overnight in violation of the Lease. Smart Aff. ¶ 23; Compl., Ex. 2. The FED trial lasted three days where representatives of the parties testified on numerous issues, including but not limited to the estoppel certificate and trailer parking. Smart Aff. ¶ 24; Compl., Ex. 3. On August 14, 2018, the Business and Consumer Court ("BCD") granted judgment for Ocean State and against Defendants on the merits in the FED action. *Id.* Ocean State followed up with a Petition for costs and attorney fees. Smart Aff. ¶¶ 25-26; Ex. 9. On September 20, 2018, the Court granted the Petition, and awarded Ocean State attorney fees and costs in the amount of $216,651.06. Smart Aff. ¶ 28; Ex. 4. Defendants timely appealed the BCD's judgment to Superior Court. Smart. Aff. ¶ 29.

On April 25, 2019, while the 2018 FED case was on appeal, Ocean State brought suit against Defendants in Superior Court for breach of the Lease provisions regarding roof repairs and memorandum of lease. Defendant's Opposition to Plaintiff's Motion to Attach (Def.'s Opp'n to Pl.'s Mot. Attach.), page 4 (citing to *Ocean State Job Lot of Maine 2017 LLC v. 20 Thames Street,*

2

*LLC & 1222 PTIP, LLC,* Docket No. PORSC-CV-2019-149). The parties eventually filed cross-motions for summary judgment in that case, and those motions are still pending.

On June 20, 2019, the Superior Court affirmed the BCD's FED judgment on the merits and on costs, but vacated the award of attorney fees on the grounds that a trial court in an FED action lacks subject matter jurisdiction to award attorney fees. Smart Aff. ¶ 29; Compl., Ex. 5. Ocean State timely appealed the attorney fees issue to the Law Court.

On October 24, 2019, Defendants filed a second FED action, again claiming that Ocean State had violated the terms of the Lease by its trailer exchange practices. Smart Aff. ¶ 34; Compl., Ex. 7. On December 20, 2019, the BCD granted Ocean State's motion to dismiss, and dismissed Defendant's 2019 FED action. Smart Aff. ¶35; Comp. Ex. 8.

On May 5, 2020, the Law Court affirmed the Superior Court's decision to vacate the attorney fees award for lack of jurisdiction. Smart Aff. ¶ 30; Compl., Ex. 6. On May 27, 2020, Ocean State brought the current action based on Section 38(m) of the Lease, seeking reimbursement of the attorney fees incurred defending the 2018 and 2019 FED actions.

## DISCUSSION

Pursuant to the Maine Rules of Civil Procedure 4A, attachment may be ordered upon a finding by the Court that:

> [I]t is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c). A moving party must show a greater than fifty percent chance of recovering judgment in order for the Court to find the movant "more likely than not" to succeed. M.R. Civ. P. 4A advisory notes to 1992 amend., Feb. 1992, Me. Judicial Branch Website/Rules &

3

Administrative/Rules (last visited Sept. 11, 2020). The required showing must be made through affidavits, and there is no right to an evidentiary hearing. *Id.*; *see also Atlantic Heating Co. v. Lavin*, 572 A.2d 478, 479 (Me. 1996). Furthermore, plaintiff must provide supporting affidavits that "set forth specific facts sufficient to warrant the required findings, i.e., facts which warrant a finding that it is more likely than not the plaintiff will prevail at trial in an amount which at least equals the amount sought to be attached." *Schneider v. Cooper,* 687 A.2d 606, 608 (Me. 1996) (internal quotations omitted); *see* M.R. Civ. P. 4A(c) & (i). In making such a determination, the Court is to assess the "merits of the complaint and the weight and credibility of the supporting affidavits". *Porrazzo v. Karofsky,* 714 A.2d 826, 828 (Me. 1998). In sum, to succeed on a motion for attachment, a plaintiff must demonstrate through their affidavit(s): 1) a likelihood of success on the merits, and 2) the unavailability of sufficient insurance, bond, or "other security" to satisfy the potential judgment. M. R. Civ. P. 4A.[1]

As an initial matter, Defendants assert that Ocean State has sufficient security available to satisfy any judgment it might obtain, and thus its motion must be denied because it fails the second element required for attachment. Def.'s Opp'n to Pl.'s Mot. Attach. 1. Defendants argue that a portion of the rent payments Ocean State is obligated to make for the term of the lease can be set aside in order to serve as security. However, the terms of the Lease expressly prohibit this approach. *See* Compl., Ex. 1, § 4 ("[Ocean State] shall have no right at any time to abate, reduce, or set-off any rent due hereunder. . ."). Moreover, given Defendants' repeated attempts to terminate the Lease and evict Ocean State, it is unreasonable to consider a set-off of future rent payments as adequate security in this case. The Court is unaware of the existence of any alternative security. For these reasons, the Court finds that Ocean State lacks security to satisfy any eventual judgment.

---

[1] The standard for attachment on trustee process is set forth in M.R. Civ. P. 4(B)(c) and is virtually identical to that set out in Rule 4A. *See Libby O'Brien Kingsley & Champion, LLC. v. Blanchard*, 2015 ME 101, 121 A.3d 109.

**I. Ocean State has established that it will more likely than not recover judgment against Defendants for breach of contract.**

The crucial claim in this matter is Ocean State's breach of contract claim based on the Lease. In order to obtain relief for breach of contract, a plaintiff must "demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter,* 2014 ME 51, ¶ 10, 89 A.3d 1088 (citing *Me. Energy Recovery Co. v. United Steel Structures, Inc.,* 1999 ME 31, ¶¶ 7-8, 724 A.2d 1248).  Here, Ocean State asserts that Defendants breached § 38(m) of the lease by failing to reimburse them for the attorneys' fees Ocean State incurred while successfully defending the 2018 and 2019 FED actions. Compl. On that basis, Ocean State requests that this Court grant its motion for attachment and motion for attachment on trustee process in the amount of $444,033.09.

According to § 38(m) of the Lease, "a party that initiates an action to enforce the terms of the lease, and does not prevail, must pay to the prevailing party "attorneys' fees, filing fees, and court costs." Compl., Ex. 1 at § 38(m). According to Ocean State, Defendants initiated actions to enforce the terms of the Lease by filing the 2018 and 2019 FED complaints. *See* Compl. Ex. 2, and 6. The Court agrees, as both FED actions turned entirely on Defendants' attempts to enforce the terms of the lease, which Defendants argued gave them superior rights to possession.

First, as set forth in the 2018 FED complaint, Defendants alleged that Ocean State failed to abide by the lease terms when they refused to provide Defendants with an estoppel certificate and left trailers parked at a loading dock overnight. As a consequence, Defendants sought possession of the property pursuant to the alleged termination and eviction rights described in the Lease. In the FED action, Defendants sought to enforce Sections 3, 9, 27, and 29 of the Lease, while demanding Ocean State comply with Sections 12, 21, and 24. Nonetheless, Ocean State

prevailed on the merits of the 2018 FED action, and according to the plain language of § 38(m), is entitled to its costs and attorneys' fees.

Likewise, in the 2019 FED action, Defendants initiated a second complaint to enforce terms of the Lease, again alleging violations relating to Ocean State's trailer exchange practices. *See* Compl. Ex. 7. In this action, Defendants sought enforcement of Section 3 of the Lease, while again demanding Ocean State comply with Sections 12, 21, and 24. Ocean State also prevailed in the 2019 FED action. Ocean State is therefore again entitled to its attorney fees pursuant to Section 38(m) of the Lease. Because Ocean State has already paid its attorneys, and Defendants have failed to provide reimbursement, Defendants have materially breached the Lease's terms. Ocean State's losses amount to $444,033.09.

Defendants correctly assert that FED actions are summary proceedings, generally limited to deciding the single issue of who is entitled to immediate possession of real property. *Tozier v. Tozier,* 437 A.2d 645, 647 (Me. 1981). As such, parties are generally barred from joining related tort or contract actions with an FED action. M.R. Civ. P. 80D(g) (Forcible entry and detainer actions shall not be joined with any other action, nor shall a defendant in such action file any counterclaim.); *see also Bureau v. Gendron,* 2001 ME 157, ¶ 9, 783 A.2d 643. Despite the narrow focus of FED actions, there is no avoiding the fact that Defendants' FED actions attempted to enforce the terms of the Lease and thereby obtain possession of the property. In both FED actions, Defendants expressly sought the enforcement of various sections of the Lease, while demanding Ocean State comply with others.[2] Therefore, the FED action was brought with the purpose of enforcing terms and provisions of the lease, as described in § 38(m). Although from a statutory

---

[2] In both FED actions, Defendants sent letters to Ocean State purporting to terminate the Lease. The letters expressly stated that Defendants were exercising their termination rights pursuant to Section 24 of the Lease and detailed the sections of the Lease they argued Ocean State had violated. *See* Compl. Ex. 38 and 39.

perspective FED actions are limited in scope to evaluating parties' competing rights to possession of real property, in this case that analysis encompasses and turns on Defendants' attempt to enforce the terms of the Lease.

Finally, Defendants argue that Section 38(m) is inapplicable, and that Section 24 of the Lease is the controlling attorney fees provision in this matter. The Court disagrees. By its plain language, Section 24 applies when Defendants terminate the Lease. Compl. Ex. 1, § 24. Here, the Lease was never terminated due to Ocean State prevailing in both FED actions. Thus, Section 38(m) controls, and Section 24 is inapplicable.

**II. Neither *Res Judicata* nor Abatement Bar Ocean State's Recovery.**

Regardless of whether Section 38(m) applies to this matter, Defendant asserts that Ocean State improperly split its cause of action, and this action for attorney fees is precluded by *res judicata* or abatement. Defendants argue that Ocean State should have amended its still pending 2019 breach of Lease action against Defendants to include the present claim for attorney fees. However, neither doctrine is applicable, and therefore neither doctrine bars Ocean State's recovery.

The doctrine of *res judicata* prevents the relitigation of matters already decided. *Portland Water Dist. v. Town of Standish,* 2008 ME 23, ¶ 7, 940 A.2d 1097. The doctrine consists of two components, issue preclusion and claim preclusion. *Id.* "Issue preclusion, or collateral estoppel, 'prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.'" *Id.* at ¶ 9 (quoting *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131). Claim preclusion prevents relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the

7

matters presented for decision in the second action were, or might have been litigated in the first action. *Id.* at ¶ 8. Defendants assert that Ocean State should have brought its claim for attorney fees in the pending 2019 breach of lease action, and having failed to do so, once that action is decided the claim for attorney fees will be barred.

Neither component of *res judicata* bars Ocean State from recovering in this case. The present claim could not have been brought in Ocean State's 2019 breach of lease action, because the attorney fees issue remained on appeal to the Law Court until after cross motions for summary judgment were submitted in that action. By the time the appeal was decided, the deadlines for amending the pleadings in the 2019 breach of lease action had long since expired.[3] A final judgment in Ocean State's 2019 breach of lease action will therefore not have preclusive effect on this matter. Further, in order to avoid the result of having two separate cases between the parties dealing with Lease issues, but on separate tracks, Ocean State can still move in its 2019 breach of lease action for permission to amend the pleadings, or either party can move in either case to consolidate the two cases.

Defendant also alleges that the doctrine of abatement bars Ocean State's recovery because a final judgment in the prior action would support the application of *res judicata* to the issues of the second action. *Lucas v. Porter*, 755 N.W.2d 88, 94-95 (2008). However, as previously stated, the doctrine of *res judicata* is not applicable to these separate cases, and thus abatement is likewise inapplicable.

**III**. **Ocean State's Attorneys' Fees are Reasonable.**

Finally, Defendants argue that even if Ocean State is entitled to an attachment, it should be limited to a maximum of $191,463.57, as it would be unreasonable to accumulate $444,033.09 in

---

[3] Confirmed at oral argument.

8

attorney fees defending two FED actions. Defendants likewise assert that Ocean State should be unable to depend on the attorney fees award initially approved by the BCD but vacated by the Law Court. The Court disagrees. Despite the Law Court's vacation of the prior attorney fees award for *lack of subject matter jurisdiction*, there is no reason for this Court to believe the prior award is unreasonable or unjust, given the Court now has jurisdiction through this breach of Lease action. Further, in light of the frequency and intensity of litigation surrounding the Lease, the complexity of the FED actions at issue, and the degree of potential loss to Ocean State, and other factors, *see Homeward Residential, Inc. v. Gregor*, 2017 ME 128, ¶ 15, 165 A.3d 357, the Court finds Ocean State's attorney fees to be reasonable.

## CONCLUSION

For the reasons set forth above, the Court finds that Ocean State is more likely than not to succeed on the merits of its claim, and there is no security available to satisfy the judgment. Accordingly, the Court grants Ocean State's motion for attachment and attachment on trustee process in the amount of $444,033.09.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated: September 14, 2020                         _____/s_____

Michael A. Duddy,
Judge, Business and Consumer Court

9

OCEAN STATE JOB LOT of MAINE 2017, LLC,

    *Plaintiff(s)*

*v.*

20 THAMES ST.,
and 122 PTIP, LLC

    *Defendant(s)*

Party Name:                                               Attorney Name:

*Ocean State Job Lot of Maine*        **Seth Brewster, Esq.**
*2017, LLC*                        **Micha Smart, Esq.**
                                    Eaton Peabody
                                    PO BOX 15235
                                    100 Middle Street
                                    Portland, ME 04112-5235

*20 Thames Street, LLC,*          **Glen Israel, Esq.**
*and 122 PTIP, LLC.*                 Bernstein Shur Sawyer, Nelson
                                      PO BOX 9729
                                    Portland ME, 04104-5029